## NEWMAN *v.* UNITED STATES EX REL. FRIZZELL.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 813.   Argued April 13, 1915.—Decided June 21, 1915.

In *quo warranto* proceedings brought in the name of the United States on the relation of a citizen and taxpayer of the District of Columbia for the purpose of ousting from the office of Civil Commissioner of the District one appointed by the President and confirmed by the Senate on the ground that he was not, as required by the Act of June 11, 1878, c. 180, § 1, 20 Stat. 103, an actual resident of the District of Columbia for three years next preceding his appointment, *held* that:

In early days usurpation of office was treated as a crime, and could be prosecuted only as such and by duly authorized prosecuting officer and a private citizen could not prosecute such a proceeding.

Subsequently after modification of the criminal features, the writ of *quo warranto* came to be used as a means of determining which of two claimants was entitled to an office.

Under the District Code of 1902 *quo warranto* is not limited to proceedings against municipal officers, but extends to all persons in the District exercising any office, civil or military; these provisions never having been judicially interpreted heretofore, this

case must be determined according to the special language of that Code in the light of general principles applicable to *quo warranto*.

Owing to the many reasons of public policy against permitting a public officer to be harassed with litigation over his right to hold office, Congress has not authorized, but has placed obstacles in the way of, a private citizen on his own motion to attack an incumbent's title to office.

Under the District of Columbia Code a third person may not institute *quo warranto* proceedings without the consent of the law officers of the Government and also of the Supreme Court of the District.

The District Code makes a distinction between a "third person" and an "interested person" in maintaining *quo warranto* proceedings.

While every citizen and every taxpayer is interested in the enforcement of law and in having only qualified officers execute the law, such general interest is not a private but a public interest, which is not sufficient to authorize the institution of *quo warranto* proceedings.

The mere fact that one is a citizen and taxpayer of the District of Columbia does not make him an interested party who may maintain *quo warranto* proceedings against the incumbent of an office on the consent of the court, although the law officers of the Government refuse such consent.

An interested person within the meaning of the provisions of the District Code in regard to *quo warranto* proceedings is one who has an interest in the office itself peculiar to himself whether the office be elective or appointive.

Unless the right to maintain *quo warranto* proceedings under the District Code were limited to persons actually and personally interested, every officer attached to the Government at Washington would be subject to attack by persons having no claim in the office or interest therein different from that of every other citizen and taxpayer of the United States.

As §§ 1538-1540, Code District of Columbia, apply to actions in *quo warranto* instituted by authorized parties against National officers of the United States, they are general laws of the United States and not merely local laws of the District of Columbia, and the judgment of the Court of Appeals of the District construing those sections is reviewable by this court under § 250, Judicial Code.

43 App. D. C. 53, reversed.

THE President, on June 23, 1913, nominated Oliver P. Newman as Civil Commissioner of the District of Columbia. The nomination was referred to a standing committee of the Senate. Certain persons filed objections to the confirmation on the ground that 'Newman had not been an actual resident of the District for three years immediately prior to his nomination' and, therefore, was not qualified to hold the office under the provision of the act of June 11, 1878 [1] (20 Stat. 103, § 1).

At the hearing before the Committee there was testimony that Newman, who was a newspaper correspondent, came to Washington in March, 1910, with the intention of becoming a resident of the District. He rented an apartment in which he resided until the opening of the Presidential Campaign, in the summer of 1912. He was then assigned to newspaper work which took him out of the city. He accepted the employment upon the understanding that it was a temporary arrangement and that he was to return to Washington as soon as the campaign was over. In the discharge of his duties as correspondent he was absent in Chicago and other places until the inauguration. He then returned to Washington and was there living when on June 23, 1913, he was appointed one of the Civil Commissioners of the District. The Committee made a favorable report and he was then confirmed by the Senate.

Thereafter William J. Frizzell called the attention of the Attorney General and the District Attorney to facts which, he insisted, 'proved that Newman had not been an actual resident of the District for three years next preceding his nomination.' On the basis of such facts

[1] "The two persons appointed from civil life shall, at the time of their appointment, be citizens of the United States, and shall have been actual residents of the District of Columbia for three years next before their appointment, and have, during that period, claimed residence nowhere else, . . ."

he requested those officers to institute *quo warranto* proceedings for the purpose of ousting Newman from the office. Both officers declined the request and thereupon Frizzell, alleging himself to be a citizen and a taxpayer of the District, applied to the Supreme Court of the District for permission to use the name of the Government in *quo warranto* proceedings. The court granted the request and thereupon this case of the "*United States on the relation of William J. Frizzell* v. *Oliver P. Newman*," was instituted.

The Respondent demurred on many grounds, among others, that Frizzell was not an interested person and that the court could not go behind the finding of the President and of the Senate that Newman was qualified. The demurrer was overruled and the case submitted to the jury to decide the question of fact as to Newman's residence. Testimony was taken explanatory of his absence from Washington on newspaper work. The court, among other things, charged the jury that there was a difference between "legal residence" and "actual residence." Under the charge, the jury found against Newman. The judgment ousting him from the office was affirmed by the Court of Appeals of the District—one judge dissenting.

The case is here on a writ of error which raises several important questions which, however, cannot be decided if, under the laws of the District of Columbia, Frizzell, as a private citizen was not authorized to institute this proceeding to test the title to a public office to which he himself made no claim.

*Mr. Jackson H. Ralston* and *Mr. John W. Davis*, with whom *Mr. Wm. E. Richardson, Mr. George W. Hott* and *Mr. Conrad H. Syme* were on the brief, for plaintiff in error:

The relator was not an interested party within the meaning and intent of the statute.

A mere taxpayer is not an interested person, the contest being as to a public office.

It was not the intention of Congress that appointees to office, exercising their functions in the District of Columbia, should be subject to *quo warranto* at the suit of a district citizen or taxpayer.

The courts have no right to review presidential and senatorial determination of the qualifications of an officeholder.

The courts below disregarded presidential and senatorial action as without even evidential value in the *quo warranto* proceeding.

Newman possessed the statutory qualifications of a Commissioner of the District of Columbia.

See extracts from chapter 51, D. C. Code, on *quo warranto* and the statute relating to the same and also statutes of various States prohibiting *quo warranto* by private individuals and numerous authorities of this and other courts supporting these contentions.

*Mr. Joseph W. Bailey*, with whom *Mr. Arthur A. Birney* and *Mr. William J. Neale* were on the brief, for defendant in error:

This court has no jurisdiction as there was not drawn in question the construction of a law of the United States; or the validity of any authority exercised under the United States; or the existence or scope of any power or duty of an officer of the United States; or the jurisdiction of the trial court.

The right to institute *quo warranto* proceedings against a municipal officer whose qualifications are defined by positive law, is not confined to the Attorney General and District Attorney, but may be allowed by a judge of the Supreme Court of the District of Columbia on the application of an interested person after refusal of the law officers to take action. *Torbert* v. *Bennett*, 24 Wash. Law

Rep. 149, 156; Code, §§ 1538–1544; *Union Pac. R. R. v. Hall,* 91 U. S. 343, decided 1875; *Downing v. Ross,* 1 App. D. C. 251, 253; High on Ex. Rem., App. A.

A citizen taxpayer has such interest in the office of Commissioner of the District of Columbia that he must be regarded as a person interested and entitled to apply for a *quo warranto* in respect to that office. *Mitchell v. Tolan,* 4 Vroom, 195, 199; *Richards v. Hammer,* 42 N. J. L. 435; *Hann v. Bedell,* 67 N. J. L. 148; *Waterbury v. Martin,* 46 Connecticut, 479; *State &c. v. Vail,* 53 Missouri, 97, 110; *Davis v. Dawson,* 90 Georgia, 817; *Covatt v. Mason,* 101 Georgia, 246; *State v. Kohnke,* 109 Louisiana, 838; overr'g 23 La. Ann. 25; *White v. Barker,* 116 Iowa, 96; *Foard v. Hall,* 111 N. Car. 369; *Pike County v. Metz,* 11 Illinois, 202; *Keliher v. Fordyce,* 115 Wisconsin, 608; *William v. Samuelson,* 131 Wisconsin, 499; *Barton v. Londoner,* 13 Colorado, 303, 314; *Commonwealth v. Meeser,* 44 Pa. St. 341. See also English decisions in harmony herewith. *King v. White,* 5 Ad. & E. 613; *King v. Parry,* 6 Ad. & E. 810; *Queen v. Quayle,* 11 Ad. & E. 508.

But every citizen of a town has an interest in its municipal offices which will support a *quo warranto* to test the right of an incumbent thereto. 7 Lawson's Rights, Rem. & Proc., § 4012. See also High on Ex. Rem., §§ 701, 702; Paine on Elections, § 873; Throop on Pub. Officers, § 781; *State v. Dahl,* 69 Minnesota, 108; *Davis v. City Council,* 90 Georgia, 821.

Confirmation by the Senate of an appointment by the President does not bar judicial inquiry into eligibility of the appointee under the act of Congress which created the office. *Fox v. McDonald,* 21 L. R. A. 529, 535, 536.

The right of choice was confined to a class, and persons not within that class were and are disqualified from holding the office and discharging the functions of Civil Commissioner. The writ here is not directed against the Executive, but seeks to oust the respondent as one dis-

qualified by law to receive the executive appointment, Congress has declared that the alien or the non-resident may not exercise the functions of that particular office.

The appointment and confirmation do not establish qualifications which did not exist and render the appointee capable to receive appointment whom the statute disqualifies from receiving it. The Floyd Acceptances, 7 Wall. 666, 676; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

The eligibility of one to hold the governorship of a State to which he had been elected was inquired into by *quo warranto* by the Supreme Court of Wisconsin. *Atty. Gen.* v. *Barstow*, 4 Wisconsin, 567; High on Ex. Rem., § 634; *Atty. Gen.* v. *Vail*, 53 Missouri, 97, 108.

The cause was properly submitted to the jury. An instructed verdict for respondent was impossible under the evidence.

The issue of actual residence for three years was submitted to the jury under instructions which embodied all the principles contended for by appellant in his prayers directed to that subject, and were more favorable than he was entitled to have them. He did not except to the charge as given.

In the light of the verdict we hesitate to discuss the distinctions between "residence," actual residence and "domicile," for Mr. Newman's actual absence was conceded, and his claim of intention to return, as a substitute for presence in the District was negatived by the verdict.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

1. Usurpation of a public office, from an early day was treated as a crime and, like all other crimes, could be prosecuted only in the name of the King by his duly authorized law officers. When a judgment was obtained against the intruder he was not only ousted from his office

but fined for his criminal usurpation. A private citizen could no more prosecute such a proceeding in his own name than he could in his own name prosecute for the crime of murder—even though the victim was his near kinsman.

2. But in time the criminal features were modified and it was recognized that there might be many cases which—though justifying *quo warranto* proceedings—were not of such general importance as to require the Attorney General to take charge of the litigation. This was especially true in reference to the usurpation of certain municipal offices named in 9th Anne, ch. 20. By that act, passed in 1710, it was therefore provided that it should be lawful "for the proper officer by leave of the court to exhibit an information in the nature of a *quo warranto at the relation of any person desiring to prosecute the same*" against the designated municipal officers. The writ thus came to be used as a means of determining which of two claimants was entitled to an office, but continued to be so far treated as a criminal proceeding as to warrant not only a judgment of ouster, but a fine against the respondent if he was found to have been guilty of usurpation. *Standard Oil Co. v. Missouri*, 224 U. S. 282. This quasi-criminal act was adopted in some of the American States and formed the basis of statutes in others. It does not seem ever to have been of force in any form in the District of Columbia. *Torbert* v. *Bennett*, 24 Wash. Law Rep. 156.

In 1902 Congress adopted a District Code, containing a Chapter on *quo warranto* which though modeled after the English statute differed therefrom in several material particulars. The writ was treated as a civil remedy; it was not limited to proceedings against municipal officers, but to *all* persons who in the District exercised *any office, civil or military*. It was made available to test the right to exercise a public franchise, or to hold an office in a private corporation. Instead of providing that "*any person desiring to prosecute*" might do so with the consent

of the court, certain restrictions were imposed and one enlargement of the right was made. These provisions [1] have never received judicial interpretation. This case must, therefore, be determined according to the special language of that Code, in the light of general principles applicable to *quo warranto*—the prerogative writ by which

---

[1] SEC. 1538. *Against Whom Issued.*—A *quo warranto* may be issued from the Supreme Court of the District in the name of the United States—

First. Against a person who usurps, intrudes into, or unlawfully holds or exercises within the District a franchise or public office, civil or military, or an office in any domestic corporation.

Second. Against any one or more persons who act as a corporation within the District without being duly authorized, or exercise within the District any corporate rights, privileges, or franchises not granted them by the laws in force in said District.

And said proceedings shall be deemed a civil action.

SEC. 1539. *Who may institute.*—The Attorney General or the District Attorney may institute such proceedings on his own motion, or on the relation of a third person. But such writs shall not be issued on the relation of a third person, except by leave of the court, to be applied for by the relator, by a petition duly verified, setting forth the grounds of the application, or until the relator shall file a bond with sufficient surety, to be approved by the Clerk of the court, in such penalty as the court may prescribe, conditioned for the payment by him of all costs incurred in the prosecution of the writ in case the same shall not be recovered from and paid by the defendant.

SEC. 1540. *If Attorney General and District Attorney Refuse.*—If the Attorney General and the District Attorney shall refuse to institute such proceedings on the request of a person interested, such person may apply to the court by verified petition for leave to have said writ issued; and if in the opinion of the court the reasons set forth in said petition are sufficient in law, the said writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of said interested person, on his compliance with the condition prescribed in the last section as to security for costs.

SEC. 1541. *Relator Claiming Office.*—When such proceeding is against a person for usurping an office, on the relation of a person claiming the same office, the relator shall set forth in his petition the facts upon which he claims to be entitled to the office.

the Government can call upon any person to show by what warrant he holds a public office or exercises a public franchise.

3. The District Code still treats usurpation of office as a public wrong which can be corrected only by proceeding in the name of the Government itself. It permits those proceedings to be instituted by the Attorney General of the United States and by the Attorney for the District of Columbia. By virtue of their position, they at their discretion, and acting under the sense of official responsibility, can institute such proceedings in any case they deem proper. But, there are so many reasons of public policy against permitting a public officer to be harassed with litigation over his right to hold office, that the Code, not only does not authorize a private citizen, on his own motion, to attack the incumbent's title, but it throws obstacles in the way of all such private attacks. It recognizes, however, that there might be instances in which it would be proper to allow such proceedings to be instituted by a third person—but, it provides that such "third person" must not only secure the consent of the law officers of the Government but the consent of the Supreme Court of the District of Columbia before he can use the name of the Government in *quo warranto* proceedings.

4. The Code—making a distinction between a "third person" and an "interested person"—recognizes also, that there might be instances in which a person might have such an *interest* in the matter as to entitle him to a hearing—even where he had failed to secure the consent of the Attorney General or District Attorney to use the name of the United States. Section 1540 deals with that case and provides that where these law officers have refused the request of a "person interested" "he may apply to the court by a verified petition for leave to have said writ issue." If, in the opinion of the court, his reasons are sufficient in law the said writ shall be allowed to be

issued . . . in the name of the United States on the relation of said interested person on his giving security for costs.

If the question of Frizzell's "interest" here had depended upon a matter about which the evidence was in conflict, the finding of the Supreme Court might not be subject to review. But if the established facts show that, as a matter of law he was not an "interested person" the court had no authority to grant him permission to use the name of the Government and the case must be dismissed. So that the fundamental question is whether the law of force in the District permitted him, as a private citizen without the consent of the law officers, to test Newman's title to the public office of Civil Commissioner.

Frizzell does not allege. that he had been an incumbent of that office and had been unlawfully ousted before his term expired. He does not set up any claim to the office. And, of course, if he, as a citizen and a taxpayer, has the right to institute these proceedings, any other citizen and taxpayer has a similar right to institute proceedings against Newman and all others who "exercise within the District . . . a public office, civil or military." District Code, 1538 (1). Such result would defeat the whole policy of the law which still regards usurpation as a public wrong to be dealt with primarily by the public prosecutors.

5. In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the District Attorney who are expected by themselves or those they authorize to institute *quo warranto* proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law.

That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title.

6. As pointed out in the carefully prepared opinion of the majority of the Court of Appeals of the District, there is much conflict as to the meaning of the phrase "interested person" in this class of cases. At first reading the conflict seems irreconcilable. But upon examination it will appear that the difference is often due to a difference in the public policy and statutes of the respective States. In some the writ issues only at the request of the Government's law officers; in others at the instance of a person claiming the office; in others at the request of a person claiming the office or interested therein; in others at the instance of a person interested; in others at the request of any person who can secure the consent of the court; and in five or six others the legislature has thrown open the door and permitted *any person* who desires to do so to use the writ. This is true of the Acts underlying some of the decisions relied on by the Relator, Frizzell.

For example, the English cases are based on the statute of 9th Anne, ch. 20, which, in terms, related to suits against those "who unlawfully exercise an office within cities, towns and boroughs." It expressly authorized the courts to permit informations in the nature of *quo warranto* "at the relation of *any person . . . desiring to sue or prosecute the same.*" Some of the other decisions cited are from States where the statute provides that the proceedings might be instituted at the relation of "any person desiring to present the same"; "upon the complaint of any private party"; "upon the relation of any person desiring to sue or prosecute the same." But there

are so many and such weighty reasons against permitting private persons to raise questions as to the incumbent's title to a public office that, even in those States which permit "*any person*" to institute *quo warranto*, the courts have always required the relator to show that he was a citizen and taxpayer.

The act of Congress of force in the District instead of being limited to municipal officers applies to any office "*civil* or *military*" and differs from those in any of these States. It specially differs from those which treat the writ as being available to *any person*. The Code provides that a "third person"—the equivalent of "any person"— may institute the proceedings only after he has secured the consent of the law officers and the court. It makes a distinction between a "third person" and an "interested person" and provides that if the Attorney General refuses to give his consent to the latter such "interested person" may secure the right to use the name of the Government by satisfying the Supreme Court of the District that his reasons for applying therefor are sufficient in law.

Frizzell applied to the Attorney General for permission to institute the proceedings. Failing to secure that consent, he then applied to the Supreme Court claiming that the fact that he was a citizen and a taxpayer made him an "interested person" entitled to the use of the writ. But such a construction would practically nullify the requirement to obtain the consent of the Attorney General and the District Attorney. For if being a citizen and a taxpayer was sufficient to warrant the court in giving the consent, it was useless to require an application to be first made to the Attorney General because practically every litigant would have the qualification of citizenship and many would have that of being a property owner.

7. Considering the ancient policy of the law and the restrictions imposed by the language of the Code, it is evident that in passing this statute Congress used the

words "third person" in the sense of "any person" and
the phrase "person interested" in the sense in which it so
often occurs in the law—prohibiting a judge from pre-
siding in a case in which he is interested; preventing a
juror from sitting in a case in which he is interested; and
permitting interested persons to institute *quo warranto*
proceedings. In the illustrations suggested, the interest
which a judge had as a member of the public would not
disqualify him from sitting in a case of great public im-
portance and in which the community at large was con-
cerned. The interest which disqualifies a juror from serv-
ing, as well as the interest which would authorize this
plaintiff to sue, must be some personal and direct interest
in the subject of the litigation. The same definition has
often been given in *quo warranto* cases. The interest which
will justify such a proceeding by a private individual must
be more than that of another taxpayer. It must be "an
interest in the office itself and must be peculiar to the
applicant." *Demarest* v. *Wickham*, 63 N. Y. 320; *Com-
monwealth* v. *Cluley*, 56 Pa. St. 270; *State* v. *Taylor*, 208
Missouri, 442; *Robinson* v. *Jones*, 14 Florida, 256; *In re
Stein*, 39 Nebraska, 539; *State ex rel. Depue* v. *Matthews*,
44 W. Va. 372, 384; *Com. ex rel. Butterfield* v. *McCarter*, 98
Pa. St. 607; *State* v. *Boal*, 46 Missouri, 528; *Brown* v.
*Alderman*, 82 Vermont, 529; *Mills* v. *Smith*, 2 Washing-
ton, 572; *Antrim* v. *Reardan*, 161 Indiana, 250; *Harrison*
v. *Greaves*, 59 Mississippi, 455; *Andrews* v. *State*, 69
Mississippi, 740 (3), 746; *Toncray* v. *Budge*, 14 Idaho,
639; *Hudson* v. *Conklin*, 73 Kansas, 764; *Vrooman* v.
*Michie*, 69 Michigan, 47; *Dakota* v. *Hauxhurst*, 3 Dakota,
205.

The language of the Code, supported by the history and
policy of the law, sustains the proposition that one who
has no interest except that which is common to every
other member of the public is not entitled to use the
name of the Government in *quo warranto* proceedings.

For if the allegations in such a suit by a private citizen set out any cause of action at all, it shows on its face that it was a cause of action belonging to the whole body of the public and which, therefore, should be prosecuted by the public representative.

The rule is the same regardless whether the office is elective or appointive. For in neither case is there any intent to permit the public office to be the subject-matter of private litigation at the instance of one who has no interest therein which differs from that of every other member of the public. The claim that this construction makes the statute nugatory cannot be sustained, for the statute, as already pointed out, gives a person who has been unlawfully ousted before his term expired, a right, on proof of interest, to the issuance of the writ and there might be cases under the civil service law in which the relator would have an interest and therefore a right to be heard.

8. The conclusion, that the Relator must have a personal interest in the office before he can sue in the name of the United States, is strengthened by the fact that the courts of the District not only have jurisdiction to issue *quo warranto* against officers of the District, but against all those, attached to the seat of government, who hold a statutory office. For, if a private citizen and taxpayer could institute *quo warranto* proceedings to test the title to the office of Civil Commissioner of the District, he could, under the same claim of right, institute like proceedings against any of those statutory officers of the United States who, in the District exercise many important functions which affect persons and things throughout the entire country.

The President has the power of removal and there have been few, if any, cases brought to test the title of Federal offices. But such cases might arise as to statutory officers attached to the seat of government and if

they did, the Supreme Court of the District could exer-cise *quo warranto* jurisdiction, as it now does in cases of mandamus and injunction against appointed Federal officers who perform duties in Washington. This appears from comparing the provisions of Rev. Stat., §§ 1795 and 1796 with § 1538 (1) of the District Code. The Revised Statutes declare that the District of Columbia shall be the seat of government, and "all offices attached to the seat of government *shall be exercised in the District of Colum-bia.*" The Code, [§ 1538 (1)] provides that the Supreme Court shall have jurisdiction to grant *quo warranto* "against a person who unlawfully holds or *exercises within the District* a . . . public office, civil or mili-tary." It was probably because of this fact, that National officers might be involved, that the Attorney-General of the United States was given power to institute such proceedings—instead of leaving that power to the Dis-trict Attorney alone as would probably have been the case if only District officers were referred to in the Code.

Manifestly, Congress did not intend that all these officers, attached to the Executive branch of the Govern-ment at Washington, should be subject to attacks by persons who had no claim on the office, no right in the office, and no interest which was different from that of every other citizen and taxpayer of the United States.

9. This fact also shows that §§ 1538–1540 of the Dis-trict Code, in proper cases, instituted by proper officers or persons, may be enforceable against National officers of the United States. The sections are therefore to be treated as general laws of the United States,—not as mere local laws of the District. Being a law of general operation it can be reviewed on writ of error from this court. *American Co.* v. *Commissioners of the District,* 224 U. S. 491; *McGowan* v. *Parish,* 228 U. S. 317.

It follows that the motion to dismiss is denied; the

application for a writ of certiorari is refused; the judgment is reversed, and the case remanded with instructions to dismiss the *quo warranto* proceedings.

*Reversed.*

MR. JUSTICE McKENNA and MR. JUSTICE PITNEY dissent.

MR. JUSTICE VAN DEVANTER dissents upon the ground that, the sections of the District Code being local laws, the case cannot be reviewed here on writ of error.