(No. 26426.—

JUNE ROWAN *et al.* Appellants, *vs.* THE CITY OF SHAWNEE-
TOWN, Appellee.

*Opinion filed November 24, 1941.*

SCERIAL THOMPSON, for appellants.

JOSEPH L. BARTLEY, and C. K. ROEDEL, for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of
the court:

Appellants June Rowan, Louisa Mathis, Faye Jenkins,
Myra Weiderhold and Al Lowe, Jr., residents and prop-

erty owners of the city of Shawneetown, on their own relation filed a petition in the circuit court of Gallatin county praying that they be granted leave to file a complaint in *quo warranto* against the city of Shawneetown. The purpose of such proceeding was to test the legality of certain annexation proceedings. The appellee moved to strike the petition and appellants filed what is termed an answer to the motion. The application was submitted to the court for a hearing on the petition, motion, answer, attached exhibits and accompanying affidavits. An order was entered denying appellants leave to file the complaint in *quo warranto*. They have appealed directly to this court.

The city of Shawneetown has many times during its history been inundated by flood waters of the Ohio river. Early in its history levees were constructed to protect it from overflow and from time to time these were reinforced and made higher. In 1937, the flood waters rose to an unprecedented height, overflowed the levee and inundated the city, causing severe damage and loss of property. Following the flood some of the residents of Shawneetown became interested in a plan whereby they would obtain permanent relief from flood waters. The plan evolved provided for the annexation to the city of an area of land which had an elevation above flood stages. The plan proposed furnished means whereby the citizens might all move their dwellings and business houses to the annexed territory.

The pleadings show that at the time appellants presented their petition the plan had been partially carried into effect. It appears that on August 9, 1938, a majority of the legal voters and property owners in the territory sought to be annexed petitioned the county court for annexation. On August 30, 1938, the county court, pursuant to due and timely notice, had a hearing and entered an order finding that the territory sought to be annexed was contiguous to the then boundary lines of the city of Shawneetown. It

was ordered, in accordance with the statute, that the question of annexation be submitted to the city council. The city council passed an ordinance annexing the territory and by resolution submitted the question to a vote at a special city election at which 715 persons voted in favor of the annexation and 240 against. On November 21, 1938, the mayor completed the statutory requirements for annexation by filing the map, court order and ordinance with the recorder of deeds of Gallatin county, and from that date the city began exercising its municipal jurisdiction over the annexed territory.

The new territory was subdivided into lots and blocks with streets and alleys and the addition was known as the Housing Authority Addition to the city of Shawneetown. Prior to the annexation proceedings the population of Shawneetown was about fourteen hundred persons and since the annexation was effected more than two hundred families moved their homes from the old site to the new addition, seventeen business houses have been erected in the new territory and more than two hundred other citizens have contracted with the State for the removal of their homes to the annexed territory. It is said that about forty per cent of the population has moved to and acquired property in the annexed territory.

The city of Shawneetown, in extending its municipal functions to the new territory, built streets, sidewalks, gutters and subsurface drainage, moved its waterworks to the new addition, spent large sums of money expanding the waterworks and erected a sewage-disposal plant. The voters of the original city and the annexed territory voted to consolidate their separate school districts and the consolidated district is now conducting school in the annexed territory. To meet the needs of the consolidated district the voters authorized a bond issue for the purpose of erecting a new school building in the annexed territory. The cost of

the building proposed will be in excess of $110,000, part of which is to be paid by the Works Progress Administration of the Federal government.

Shawneetown is the county seat of Gallatin county. After the annexation of the new addition the voters of the county authorized a bond issue of $25,000 to be added to aid from the Federal government and used to build a new courthouse and jail, the same to be located in the annexed territory. The cost was over $100,000 and the county administration is now occupying this new building.

The State of Illinois gave aid to the plan by assisting the residents of Shawneetown to move to the new territory and granted further aid by purchasing from the several owners more than 188 pieces of property in the original town. The Federal government through the Disaster Loan Corporation, has coöperated in the plan by loaning to the Housing Authority of Gallatin county the sum of $350,000 to be expended for public purposes in the annexed territory.

Appellants' theory is that the new territory was not legally annexed, that it is not now a part of the city because it was not and is not contiguous to the boundaries and corporate limits of the city, but is entirely separate therefrom. The petition shows the main part of the annexed territory is located about three miles west of the original city, and the original city and this area are connected by a strip of ground 1.21 rods wide, all of which was included in the annexation proceeding. Appellants say that such a connection does not make the annexed territory contiguous with the boundaries of the original city as is required by statute. It is alleged that such connection was a mere subterfuge to defeat the requirements of the statute and for that reason the annexation proceeding is illegal and void and the city has no lawful right to exercise its power of government over and in the annexed territory.

Section 2 of the Quo Warranto act (Ill. Rev. Stat. 1941, chap. 112. par. 10) provides that *quo warranto* proceedings

shall be brought in the name of the People of the State of Illinois by the Attorney General or State's attorney of the proper county either of their own accord or at the instance of any individual relator or by any citizen having an interest in the question on his own relation when he has requested the Attorney General or the State's attorney to bring the same and they have refused. Appellants requested the Attorney General and State's attorney to bring a *quo warranto* proceeding against the city and the record shows their refusal. Where the Attorney General and State's attorney have refused to bring a *quo warranto* proceeding at the request of an individual, the statute permits the individual to make application on his own relation but he must show he has an interest in the question. It is contended appellants' petition does not show that they had such an interest as to permit the court to grant them leave to file the *quo warranto* action.

The showing made by appellants to meet these requirements is (1) that the city has removed water main pipes, fire hydrants and the water tank from the original city to the new addition in the annexed territory, thus destroying the usefulness of the water pumping system in the old city and depriving the appellants of a normal water supply for residence, business and sprinkling purposes, causing a health and fire hazard to the appellants and their property and making it difficult for them to obtain adequate fire protection; (2) that the city has expended its motor vehicle gasoline tax funds on the streets in the annexed territory to the neglect of the streets in the original city; (3) that the city has changed the boundaries of its three wards so that the annexed territory includes two wards and elects four aldermen while the original city was made into one ward and elects two aldermen, thus depriving the appellants of their right of franchise, and (4) that the city has expended revenues derived from liquor licenses for corporate purposes in the annexed territory to the detriment

of the taxpayers in the original city; (5) that the fire fighting equipment purchased by the taxpayers of the old city was removed to the annexed territory and the property of the appellants was damaged because it was deprived of adequate fire protection; (6) that certain taxes were levied and collected to keep the levees surrounding the original city in repair, but that the city not only neglected and failed to repair such levees but spent the levee tax money for purposes pertaining to the use of the annexed territory and caused the levees to be broken and injured thus decreasing the value of appellants' property. The appellants further allege that the city commenced a series of unlawful acts according to a conspiracy and illegal plan to compel the appellants to sell their property in the original town and to move to the new addition. The affidavit of each appellant is attached to the petition stating the amount of depreciation in value of their respective properties caused by the alleged unlawful acts of the city.

The ancient common law writ of *quo warranto* was an original writ issuing out of chancery in the nature of a writ of right for the king against one who claimed or usurped any office, franchise or liberty, to inquire by what authority he asserted a right thereto in order that it might be determined. (*Ames* v. *Kansas,* 111 U. S. 449, 4 Sup. Ct. 437, 28 U. S. (L. ed.) 482; *Rex* v. *Marsden,* 3 Burr. 1817.) It was an exclusive prerogative of and could be availed of only by the Crown for the purpose of correcting public wrongs. It was never available for the correction of the private wrongs of the individual. This purely civil writ became obsolete at an early date, due partly to the complicated and cumbersome nature of the proceeding, and it was supplanted by the information in the nature of *quo warranto,* which was properly a criminal prosecution instituted by the Attorney General to fine the usurper and to oust him from the office or franchise. (3 Blackstone's Com. 263.) The information, as any other criminal action,

was under the exclusive and arbitrary control of the Attorney General. His discretion could not be coerced and leave of court to file the information was not required. A private citizen could no more prosecute such a proceeding than he could prosecute in his own name for any other crime.

Early in the history of this State a statute was passed to regulate proceedings upon information in the nature of *quo warranto* (Laws of 1833, page 506) and by subsequent enactments the uses and purposes of *quo warranto* were extended to the correction of certain wrongs done to the private rights of individuals. Section 1 of the Quo Warranto act of 1874, and subsequent amendments thereto, abrogated the common law rule and provided that an information for *quo warranto* could not be filed for the correction of wrongs done to either public or private rights except by leave of court on a showing of probable cause. Section 2 of the act of 1937 has changed the proceeding and now the Attorney General or the State's attorney may file a complaint in *quo warranto* without obtaining leave of court.

A proceeding in *quo warranto* prosecuted by such public official is now as it was at common law. Under the section of the statute referred to, however, a fundamental distinction exists between a *quo warranto* proceeding brought to protect purely public interests involving no personal or individual rights differing from those of the general public, and a proceeding brought on the relation of an individual citizen to enforce a private right in which the citizen has a purely individual and substantial interest, differing from the general public, and in which the interest or concern of the State may be small or entirely theoretical. At common law the Attorney General, and, under the Quo Warranto act of 1937, the Attorney General or the State's Attorney of the proper county, have an absolute, arbitrary discretion to determine whether they will institute *quo warranto* proceedings or not, in all cases which are of

purely public interest. No leave of court is necessary, and the discretion vested in the State's prosecuting officers can not be controlled, coerced, or reviewed by the individual citizen. *People* v. *Fullenwider*, 329 Ill. 65; *People* v. *Hanson*, 290 id. 370; *People* v. *Healy*, 231 id. 629; *Porter* v. *People*, 182 id. 516; *People* v. *North Chicago Railway Co.* 88 id. 537.

These officers have no such arbitrary authority where the proceeding is to enforce individual rights. Under the Quo Warranto act in force prior to 1937, where the individual citizen had a private and personal right, differing from that of the general public, to enforce which *quo warranto* was the only remedy, he could apply to the State's attorney with a petition showing facts necessary to establish his interest, and on such showing it then became the duty of that official to institute *quo warranto* proceedings, and if he refused to do so, he could be compelled by *mandamus* to perform that duty. (*People* v. *Healy, supra.*) Under that statute it became well settled that the interest which the individual relator must have in the question to support a *quo warranto* proceeding and one in which he could *mandamus* the State's attorney to institute *quo warranto* proceedings in his behalf, should be personal and peculiar to him, and not one shared in common by other members of the general public. The interest which an individual has as a taxpayer or as a member of the general public was held not to be sufficient. *People* v. *Fullenwider, supra; Newman* v. *United States*, 238 U. S. 537.

Under the present Quo Warranto act, in cases where individual rights are involved and the Attorney General and State's attorney refuse the request of the individual to bring a *quo warranto* action, such individual does not have to *mandamus* that official to compel the filing of the action, but he may file a complaint on his own relation, provided he first obtains leave of court. The interest which the statute requires the individual to possess to authorize the

granting of leave to file must be one that is personal to him and one that is not common to the public. The purpose and intent of the new statute was to make it possible for the individual who had been wronged in his private rights to have the writ on his own relation, and thus avoid the necessity of his resorting to a *mandamus* action against the Attorney General or State's attorney as was required under the prior act. The statute was not intended to place in the hands of the individual the right to a writ of *quo warranto* to correct a wrong common to the public. It follows that one who has no interest except that which is common to every other member of the public is not entitled to use the name of the government in *quo warranto* proceedings. The individual interest as a taxpayer, resident, or citizen was not a sufficient showing as to interest under the former act (*People* v. *Fullenwider, supra; Newman* v. *United States supra*) and for the same reasons such interest does not meet the requirements of the act of 1937.

The petition of appellants for leave to file their complaint in *quo warranto,* aside from general allegations and conclusions, does not set up any facts to show that they have a personal interest in the question sufficient to permit them to maintain the action on their own relation. The facts alleged that the city, after the annexation proceedings, removed water pipes, fire hydrants, fire fighting equipment, tanks, etc., from the original city to the annexed territory, or that it expended its gasoline tax funds and liquor license revenue in the annexed territory, or that it changed its ward boundaries or failed to keep the levee in good repair, are not a showing of a violation of a private right but are a wrong common to all the people who reside in the old part of the city. From the facts pleaded it appears that the alleged depreciation of the value of their respective lots is caused by lessened fire protection and increased risks to flood, but all property in that area is similarly affected.

It is not necessary for us to decide in this appeal whether an individual citizen can maintain *quo warranto* proceedings, under our statute, against a municipal corporation, or to decide questions lying within the sound judicial discretion of the trial court in refusing to grant leave to file their complaint, such as *laches* or public policy, because, in this case, the appellants do not have a sufficient individual interest in the question to enable them to maintain *quo warranto* on their own relation.

The order of the circuit court denying leave to file the complaint is affirmed.

*Order affirmed.*