IN THE MATTER OF THE APPLICATION OF LUCY B. SHERRETZ FOR A WRIT OF QUO WARRANTO AGAINST HERBERT KUM, ACTING AS CHAIRMAN AND MEMBER OF THE CIVIL SERVICE COMMISSION, CITY AND COUNTY OF HONOLULU.

NO. 2896.

ARGUED MAY 8, 1952.     DECIDED MAY 28, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from the order of the judge of the circuit court of the first judicial circuit sustaining a motion to quash a writ of quo warranto.

Appellant filed a petition on January 19, 1952, setting forth that she was a resident, a taxpayer, and a duly qualified elector and voter of the City and County of Honolulu; that the respondent, while serving and acting as a member of the civil service commission of the City and County of Honolulu, was commissioned and accepted appointment as a notary public in and for the first judicial circuit of the Territory of Hawaii; that the office of notary public is an office of the Territory of Hawaii; that by virtue of section 64 of the Revised Laws of Hawaii 1945, the appellee, by his acceptance of the appointment and commission as a notary public, vacated his office as a member of the civil service commission and that notwithstanding such vacation of said office the appellee continued to act as a member of the civil service commission and still continues to usurp and exercise the powers and duties thereof without warrant of authority. Appellant prayed for the issuance of a writ of quo warranto requiring appellee to appear and show by what authority he claims to hold and enjoy the office as a member of the civil service commission.

The writ was issued and appellee appeared especially for the purpose of objecting to the jurisdiction of the court in the matter and filed a motion to quash the writ of quo warranto setting forth the several grounds upon which that motion was based.

The circuit judge held that the relator, the appellant, did not have sufficient interest to bring a proceeding for quo warranto and sustained the motion to quash the return.

The sole question before this court is whether the relator, the appellant, a resident, citizen and taxpayer, has. sufficient interest to bring a proceeding of quo warranto against one illegally holding office.

Usurpation of public office in early days was treated as a crime and, like all crimes, could be prosecuted only in the name of the King by his duly authorized officers and was punishable not only by removal from office but by fine. A private citizen could no more prosecute such a proceeding in his own name than he could in his own name prosecute for the crime of murder, even though the victim was a near kinsman. In the course of time the criminal features were modified even in Great Britain. By statute (9th Anne, ch. 20) it was provided that it should be lawful " 'for the proper officer by leave of the court to exhibit an information in the nature of *a quo warranto at the relation of any person desiring to prosecute the same*' against the designated municipal officers." (*Newman* v. *United States Ex Rel. Frizzell*, 238 U. S. 537, 544.)

Our territorial supreme court in discussing the history of quo warranto states thus: "The ancient writ of *quo warranto* as known to the common law has been obsolete in England for centuries, information in the nature of *quo warranto* having been substituted therefor (32 Cyc. 1413.) The doctrine that the usurpation of a public office is a public wrong and that the remedy is a public one to be sought only in the name of the sovereign has been relaxed by statute in nearly, if not all, jurisdictions. (High on Ext. Leg. Rem. 2 ed., § 697.) Our statutes do not expressly declare who shall, or who shall not, be parties to the proceeding. Section 2046 R. L. seems to show the intent to permit private individuals to institute the proceedings as it is there

expressly provided that the petition for the order must be sworn to 'if the application is made by a private individual.' * * * It thus appears to be the policy of our laws to permit either the attorney general, or any private person having any interest in the inquiry to institute the proceeding. * * *" (*In re Sherwood,* 22 Haw. 385, 388.)

Quo warranto or informations in the nature of quo warranto throughout the States and in England today are statutory proceedings and naturally the statutes are far from uniform; thus, it is entirely futile and of no particular value to try to distinguish the numerous and conflicting decisions. This is pointed out in *United States* v. *Newman, supra,* which, incidentally, the judge below seems to think an authority controlling the territorial courts in their construction of the territorial statutes.

Even where the statute provides that the person instituting the suit must be an "interested" person there is the same conflict of authority. In *United States* v. *Newman, supra,* it is thus stated: "* * * At first reading the conflict seems irreconcilable. But upon examination it will appear that the difference is often due to a difference in the public policy and statutes of the respective States. In some the writ issues only at the request of the Government's law officers; in others at the request of a person claiming the office; in others at the request of a person claiming the office or interested therein; in others at the request of any person who can secure the consent of the court; * * *"

The statute in Hawaii relating to quo warranto is contained in sections 10279 through 10287, inclusive, Revised Laws of Hawaii 1945. As already indicated, the act does not specifically provide who may or who may not file such proceedings, but section 10281 reads as follows: "The order is obtained by petition addressed to a circuit judge, setting out facts sufficient to show a right to the order, and sworn to if the application is made by a private individual."

This clearly indicates that the proceeding may be brought by a private individual. It will be noted that the language in this Territory is different from that used in the United States statute involved in the decision in *United States* v. *Newman, supra.*

There is no provision limiting the issuance of writs only at the request of government officers nor to persons claiming the office or interested therein, nor is there any other limitation specifically set forth.

The court, therefore, must place its own interpretation on this statute, free from any so-called controlling influence of a federal decision upon a statute somewhat similar. In fact, the court below put the cart before the horse as the universal rule is that the federal courts follow the territorial construction of territorial statutes unless the same are manifestly erroneous or in conflict with the United States Constitution or a clear departure from ordinary legal principles. (*Hawaii Consol. Ry., Ltd.,* v. *Borthwick,* 105 F. [2d] 286; *Waialua Agricultural Co.* v. *Christian,* 305 U. S. 91; *De Mello* v. *Fong,* 164 F. [2d] 232.)

"It was the exclusive province of the Supreme Court of Hawaii to resolve doubts in the interpretation of a statute of Hawaii taxing the gross income of public utilities." (*Hawaii Consol. Ry., Ltd.,* v. *Borthwick, supra.*)

"The power of the Circuit Court of Appeals to override decisions of the Supreme Court of Hawaii on questions of local law is not to be exercised in doubtful cases, but in cases of manifest error only." (*Hawaii Consol. Ry., Ltd.,* v. *Borthwick, supra.*)

"Unless there is a clear departure from ordinary legal principles, the preference of a federal court as to correct rule of general or local law should not be imposed upon Hawaii." (*De Mello* v. *Fong, supra.*)

The Supreme Court of the United States even reversed one of its own rulings relative to Hawaiian law after the

supreme court of Hawaii expressed doubt as to whether one of its interpretations which had been followed by the United States Supreme Court was the correct one. (*Lewers & Cooke, Ltd.,* v. *Atcherly,* 222 U. S. 285.)

The Hawaiian court has directly passed upon the statute relating to writs of quo warranto in the *Sherwood* case, *supra;* this case held that taxpayers and registered voters are proper parties to apply for petitions for writs of quo warranto but the demurrer of respondent should be sustained on the ground that the quo warranto would lie only against the present occupant and user of the office and not against one who claimed to have been elected and intended to occupy such an office at a future time, the proceedings being premature. The syllabus in that case reads: "SAME [Quo Warranto] — *parties to the proceeding.* Persons who are registered voters in the district where an election is held, and tax payers, are proper parties to apply, by petition for a writ of quo warranto." The statement of the trial judge that this holding was dictum is clearly erroneous. In the first place, this ground of demurrer raised the question of jurisdiction, which question must be decided *in limine* or the court would have no jurisdiction to pass upon the other questions.

The question of "dictum" and "obiter dictum" has been discussed in many cases and it has been said that where a question fairly arises in the course of a trial and it has been presented and decided in the regular course of the consideration of the case, the court's ruling in respect thereto can in no sense be regarded as a dictum *because something else was found in the end which disposed of the whole matter.* This would be particularly true with reference to where the first question was one of jurisdiction or proper parties; where several questions properly arise, the determination of one of the questions is not dictum bcause conclusion on other questions would dispose of the case on

merit. (*New York Cent. & H. R. R. Co.* v. *Price,* 159 Fed. 330, 332; *Duncan* v. *Brown,* 139 Pac. 140, 142; *Parsons* v. *Federal Realty Corp.,* 105 Fla. 105.)

The case of *New York Cent. & H. R. R. Co.* v. *Price, supra,* declared that the Supreme Court of the United States had frequently held: "Whenever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in no just sense, be called mere dictum." (Citing authorities.) The case is an interesting one for the reason that the court held that the decisions of the New York court in interpreting the New York statute were not dictum, but further held: "It is well settled that in cases of this kind the interpretation placed by the highest court of the state upon its statutes is conclusive here. We accept the construction given to a state statute by that court."

Also, the courts distinguish between what is called obiter dictum and judicial dictum. " 'Dictum' is of two kinds, 'obiter' and 'judicial.' 'Obiter dictum' is an expression of opinion by the court or judge on a *collateral* question not directly involved or mere argument or illustration originating with him, while 'judicial dictum' is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other and should not be lightly disregarded. In re Chadwick's Will, 82 A. 918, 919, 80 N. J. Eq. 168." (Words and Phrases [perm. ed.] vol. 12, p. 382.) (Emphasis added.)

Again, in the case of *Jones* v. *Pa,* 34 Haw. 12, this court raised the question of the right of a private individual to bring the writ, and following the *Sherwood* case concluded that the appellant did have such a right and the court then proceeded to decide the case upon the merits, which it

438

would not have done had not the relator been a proper party to seek the writ.

There has been no change in the statute since these decisions; on the contrary, there has been legislative acquiescence in the interpretation first given to this statute some thirty-eight years ago.

There are many authorities from other jurisdictions supporting the view taken by the Hawaiian courts and we shall cite a few of them although, as we have heretofore stated, decisions from other jurisdictions can have little bearing in view of our interpretation of the statute, particularly in view of the different wordings of the various state statutes.

In Mechem, *Public Officers,* § 490, the following statement is made: "The interest of a citizen as a tax payer is sufficient to authorize him to institute an inquiry into the title of one who assumes to exercise the functions of a municipal officer."

In *Churchill* v. *Walker,* 68 Ga. 681, it is held that every citizen of a town has such an interest in its municipal offices as will enable him to support a quo warranto proceeding to test the right of incumbents thereto.

The Georgia statute provides that the writs should be granted at the suit of some person "claiming" the office or "interested therein." The Georgia supreme court in the case of *McDuffie* v. *Perkerson,* 178 Ga. 230, 173 S. E. 151, held that "Where the purpose is to declare a public office vacant, any citizen and taxpayer may file a proceeding in the nature of quo warranto. * * *" (To the same effect are: *Stanford* v. *Lynch,* 94 S. E. 1001 [Ga.], and *Davis* v. *City Council of Dawson,* 90 Ga. 817, 17 S. E. 110.)

In the latter the court, after tracing the history of the writ at common law, proceeded as follows: "That a citizen and taxpayer has such an interest in the due administration of public affairs as will entitle him to institute proceedings

to oust an incumbent unlawfully assuming to usurp the functions of one of the public offices of the city in which such taxpayer resides is now recognized by the leading text writers on this subject. Mechem, Pub. Off., § 490; Paine, Elect., § 873; Throop, Pub. Off., § 781; 7 Lawson, Rights, Rem & Pr., § 4042. And such has been the express ruling in the following cases: Com. v. Com'rs. of Philadelphia, 1 Serg. & R. 382; State v. Hammer, 42 N. J. Law, 435; Com. v. Jones, 12 Pa. St. 365; Com. v. Meeser, 44 Pa. St. 341; Com. v. Keily, 4 Phila. 329; State v. Martin, 46 Conn. 479; Hinckley v. Breen, 55 Conn. 119, 9 Atl. Rep. 31; State v. Vail, 53 Mo. 97." (*Davis* v. *City Council of Dawson, supra.*)

The argument advanced in some of the cases, notably the *Newman* case, that to require no greater interest to be shown by petitioner for a writ of quo warranto than that possessed by a citizen, resident and taxpayer, might subject a public officer to constant harassment from the beginning to the end of his term, is without any force whatsoever.

Not only do we think there is no such danger (amply proved in Hawaii where in the last thirty-eight years only two cases by citizens seeking quo warranto to try title have reached this court) but assuming that such zeal to oust an office holder might conceivably exist, the issuance of the writ is discretionary with the court. Furthermore, a remedy is in the hands of the legislature to amend the statute if such evil results.

We conclude, therefore, that persons who are residents, registered voters and taxpayers of the City and County of Honolulu are proper parties to apply by petition for a writ of quo warranto to try title of an incumbent in public office.

Reversed and remanded for further proceedings in conformity herewith.

*R. G. Dodge* (*Heen & Kai* with him on the brief) for appellant.

*N. Felzer,* Deputy City & County Attorney (*F. A. McKinley,* Acting City & County Attorney, with him on the brief), for appellee.