# Authority of the President to Designate Another Member as Chairman of the Federal Power Commission

While a substantial argument can be made to support the President's the authority to change the existing designation of the Chairman of the Federal Power Commission and to designate another member of that agency as Chairman, sufficient doubt exists so as to preclude a reliable prediction as to the result should the matter be judicially tested.

Apparently the only remedies the present Chairman would have, if his designation should be recalled and another member of the Commission designated as Chairman, would be to bring an action in the nature of *quo warranto* or sue for the additional $500-a-year annual salary of the Chairman in the Court of Claims. Since the Chairman has no functions additional to those of any other commissioner affecting parties appearing before the Commission, their rights could not be affected even if he should win such a suit.

February 28, 1961

MEMORANDUM OPINION FOR THE ASSISTANT SPECIAL COUNSEL
TO THE PRESIDENT

This memorandum examines the President's authority to change the existing designation of the Chairman of the Federal Power Commission and to designate another member of that agency as Chairman. It concludes that, while a substantial argument can be made to support the President's authority to do so, sufficient doubt exists so as to preclude a reliable prediction as to the result should the matter be judicially tested. Nevertheless, it should be emphasized that apparently the only remedies the present Chairman would have, if his designation should be recalled and another member of the Commission designated as Chairman, would be to bring an action in the nature of *quo warranto* or sue for the additional $500-a-year annual salary of the Chairman in the Court of Claims. Since the Chairman has no functions additional to those of any other commissioner affecting parties appearing before the Commission, their rights could not be affected even if he should win such a suit.

## I.

Section 3 of Reorganization Plan 9 of 1950, 3 C.F.R. 166 (Supp. 1950), 64 Stat. 1265, relating to the Federal Power Commission, provides:

> *Designation of Chairman*.—The functions of the Commission with respect to choosing a Chairman from among the commissioners composing the Commission are hereby transferred to the President.

Plan 9 was submitted to the Congress by President Truman on March 13, 1950, along with six others relating to six of the regulatory boards and commissions. The plans were "designed to strengthen the internal administration of these bodies,"

and a feature was to vest in the President the function of designating the Chairman "in those instances where this function is not already a Presidential one." H.R. Doc. No. 81-504, at 4 (1950).

At the time Plan 9 was transmitted, section 1 of the Federal Water Power Act, as amended, provided for election of the Chairman "by the commission itself," and permitted "each chairman when so elected to act as such until the expiration of his term of office." Pub. L. No. 65-280, § 1, 41 Stat. 1063 (June 10, 1920), *as amended by* Pub. L. No. 71-412, 46 Stat. 797 (June 23, 1930).

The President explained, in his transmittal message, with respect to Plans 7–13:

> In the plans relative to four commissions—the Interstate Commerce Commission, the Federal Trade Commission, the Federal Power Commission, and the Securities and Exchange Commission—the function of designating the Chairman is transferred to the President. The President by law now designates the Chairmen of the other three regulatory commissions covered by these plans. The designation of all Chairmen by the President follows out the general concept of the Commission on Organization for providing clearer lines of management responsibility in the executive branch.

H.R. Doc. No. 81-504, at 5.[1] No mention was made in the message of the statutory provision relating to the term of service of the Chairman of the Federal Power Commission until the expiration of his term of office. Nor was it mentioned by Budget Director Frederick J. Lawton, when he supported Plan 9 in hearings before the Senate Committee which considered it along with others. Mr. Lawton testified:

> The plans affecting the Interstate Commerce Commission, the Federal Trade Commission, and the Federal Power Commission provide that the President shall designate a Commissioner to serve as Chairman. These provisions will vest uniformly in the President the function of designating Commission Chairmen. At present he already designates the Chairmen in the Federal Communications Commission, the National Labor Relations Board, and the Civil Aeronautics Board. . . .
>
> . . . .

---

[1] For a further discussion of the concept of the Commission on Organization of the Executive Branch of the Government in this area, see Commission on Organization of the Executive Branch of the Government, *The Independent Regulatory Commissions*, Rep. No. 12, at 5–6 (1949), *reprinted in* H.R. Doc. No. 81-116, at 5–6 (1949), which emphasized the desirability of the Chairman exercising administrative control.

Since the President now designates some Chairmen and does not designate others, and since Presidential designation has . . . advantages pointed out by the task force, these plans authorize Presidential designation of Chairmen in all cases.

*Reorganization Plans Nos. 7, 8, 9, and 11 of 1950: Hearings on S. Res. 253, 254, 255, and 256 Before the S. Comm. on Expenditures in the Executive Departments*, 81st Cong. 30–31 (1950) ("Reorganization Hearings"). Because the President at that time had the power to designate the Chairman of each of the three regulatory bodies referred to,[2] it could be inferred that the intent to produce uniformity in this respect extended to the Federal Power Commission. However, the fact that Plan 9 dealt only with the designation of the Chairman, and left his term, as fixed by the Federal Water Power Act, untouched was expressly called to the attention of the Senate Committee on Expenditures in the Executive Departments, the only congressional body which held a hearing on the plan.[3] That Committee had before it comments, submitted at its request, by the Federal Power Commission. A separate statement was also submitted by one of its commissioners.

The Commission commented favorably on the plan and observed that, although it had "recommended that the present statutory provision that a Chairman be elected and retain office for the balance of his term be amended, so as to provide that the Chairman be elected annually," it saw "no serious objection to the proposed designation of the Chairman by the President." Reorganization Hearings at 215.

In his separate statement, Commissioner Thomas C. Buchanan took sharp issue with the provision for choosing a Chairman. He stated:

The provision for the selection of the Chairman by the President changes only the method of "choosing" and does not affect the term of the Chairman so selected under existing law.

The term of a Federal Power Commissioner is presently 5 years, therefore, a President in the fourth year of his term might select as Chairman the member of the Commission nominated by him and confirmed by the Senate during that year. Under the terms of plan 9 as applied to the old law, the Chairman so selected would serve as such not only during the fourth year of the Presidential term in which

---

[2] The Federal Communications Act, Pub. L. No. 73-416, § 4, 48 Stat. 1064, 1066 (1934), and the National Labor Relations Act, Pub. L. No. 74-198, § 3, 49 Stat. 449, 451 (1935), provided no fixed term for the Chairmen. However, the Civil Aeronautics Act, Pub. L. No. 75-706, § 201, 52 Stat. 973, 980 (1938), provided for designation of the Chairman annually by the President.

[3] No resolution for disapproval of Plan 9 was introduced in the House of Representatives. Consequently, there were no hearings or discussion on the floor in that branch of the Congress.

he was appointed, but likewise 4 years of the succeeding term even though there may be a change in the Presidential office.

The provision of plan 9 relating to appointment might better carry out the intent of the administration if it provided that . . . chairmen shall be appointed annually by the President.

*Id.* at 215–16.

Despite the Buchanan observations, the Senate Committee reported favorably and recommended that the Congress approve Plan 9. It reported:

The designation of the Federal Power Commission Chairman by the President would provide an entirely normal channel of communication to the Commission without impairing its independence in any way. The alleged "inherent dangers" which some witnesses projected into the future simply do not exist in fact as was proved conclusively during the committee hearings when witnesses were unable to cite any evidence whatsoever of Presidential domination of the chairmen of the five regulatory agencies which he presently appoints.

S. Rep. No. 81-1563, at 5–6 (1950).

When the Plan reached the floor of the Senate, the matter of presidential designation of the Chairman was an important subject of debate. Strong objection was voiced by Senator Long to permitting the President "to name the chairman." 96 Cong. Rec. 7380 (May 22, 1950). Senator Capehart likewise opposed the Plan "for the simple reason that under it the President will be given authority to name the Chairman." *Id*. Senator Johnson called attention of the Senate to the peculiar application of the presidential designation provisions to the Federal Power Commission, quoting the statement filed with the Senate Committee by Commissioner Buchanan, and noted that none had "found any fault with Mr. Buchanan's facts" in regard to the proposal. *Id*. at 7381. Senator Johnson's reference was not pursued. Objections to presidential designation did not prevail and the resolution to disapprove the Plan was defeated by a vote of 37 to 36. *Id.* at 7383 (disapproving S. Res. 255, 81st Cong.). As a result Plan 9 became effective—pursuant to the provisions of the Reorganization Act of 1949, Pub. L. No. 81-109, 63 Stat. 203 (codified at 5 U.S.C. §§ 133z *et seq.* (1958))—on May 24, 1950. 64 Stat. 1265.

## II.

In light of the foregoing history a substantial argument can be made that approval of Plan 9 by the Congress resulted in vesting in the President the authority to designate the Chairman of the Federal Power Commission and to change that designation from time to time without limitation. The argument would rest on the

reasoning that the purpose of the plans, as described in the presidential message and executive testimony, was to bring uniformity into the designation arrangements for all seven of the regulatory commissions for which plans were submitted. Since Congress was aware of the existing right of the Chairman to serve as such throughout his term in the Federal Power Commission, it might be assumed that in the interest of uniformity it was meant to substitute for that arrangement an unlimited authority in the President with respect to the designation and removal of the Chairman of the Federal Power Commission and that this was accomplished by Plan 9.

Moreover, the power to remove an officer is traditionally regarded as an incident of the power to designate or choose him, *cf. Myers v. United States*, 272 U.S. 52, 161 (1926), and it seems it would be logical to conclude that, in context, the power to choose a Chairman conferred on the President by Plan 9 was intended to be broad enough to cover the incidental power of replacing him. This is made plain by the President's statement that the purpose of the plans was to give the President the same powers with respect to the Federal Power Commission as he already had with respect to at least two other regulatory commissions and by the testimony of the Budget Director emphasizing the need for uniformity. In other words, the function of "choosing a chairman" was intended to include all the powers incident thereto, including removal as Chairman, and therefore the plan, when it became effective, operated as subsequent legislation repealing previous inconsistent legislation.

It is true that Commissioner Buchanan had presented to the Committee his view that once a commissioner had been designated as Chairman the designation could not be changed during that commissioner's term. However, there is no evidence that the Committee adopted this view, the report being silent in this respect. Similarly, it can be argued that the fact that Commissioner Buchanan's view was also brought to the attention of the Senate is no indication that this was the view the Senate took of the matter. Further, if Plan 9 had been enacted in the course of the removal legislative process, greater weight might have to be given to Congress's failure to adopt an appropriate amendment to meet the problem raised by the contention that Plan 9 dealt only with the method of designating the Chairman as provided in the Federal Water Power Act, and not with his term. But the process of adoption of a reorganization plan differs markedly from the normal legislative process, and less weight must, therefore, be afforded to the failure to amend. Under section 6 of the Reorganization Act of 1949 (5 U.S.C. § 133z-4 (1958)) Congress had no opportunity to amend. A plan could either be permitted to take effect or be rejected by a resolution of either House expressing disfavor.

Finally, it appears clear that the President intended to place the Federal Power Commission in a situation similar to the other regulatory agencies. The House permitted the plan to go into effect on his recommendation without discussion, thereby adopting his view of the matter. Furthermore, in the absence of an

opportunity to amend, the Senate discussion should not be regarded as establishing a different intention.

On the other hand, Plan 9 literally refers only to "[t]he functions of the Commission with respect to *choosing* a Chairman" (emphasis supplied). It does not purport to deal with his term. This interpretation gains strength from the fact that the Chairman of the Civil Aeronautics Board, one of the agencies to which the President pointed as a model, had a fixed term of one year. 49 U.S.C. § 1321(a)(2) (1958). It can, therefore, be contended that the intent was actually to deal only with designation and that, even if broader powers to replace had been intended to be conferred upon the President, the language simply failed to effectuate this result. It may be of significance in this respect that, as it now appears in the United States Code, section 1 of the Federal Water Power Act, which incorporates both the original provisions of the Federal Water Power Act and Plan 9, states that the President shall designate the Chairman and that "[e]ach Chairman, when so designated, shall act as such until the expiration of his term of office." 16 U.S.C. § 792 (1958). Thus, rather than repealing prior legislation, the language of Plan 9 can be read consistently with section 1 of the Federal Water Power Act.

Removal of the limitation can, of course, be effected through amending legislation. It is not altogether clear that the reorganization method (if lapsed reorganization authority is reinstated as presently proposed) would be an available means for action which only alters the statutory term of the Chairman. Section 4(2) of the Reorganization Act of 1949 provides that any plan transmitted by the President, pursuant to section 3, "may include provisions for the appointment and compensation of the head" of an agency. 5 U.S.C. § 133z-2(2). The term of office of the head of the agency so provided for "shall not be fixed at more than four years." However, section 4(2) appears to limit the President's authority to provide for the appointment of the head of an agency only to circumstances in which "the President finds, and in his message transmitting the plan declares, that by reason of a reorganization made by the plan such provisions are necessary." The implication, therefore, is that the authority conferred by section 4(2) may be used only in support of a reorganization plan containing other provisions. It would follow that, unless the provision relating to the Chairman were part of a reorganization plan affecting other operations of the Federal Power Commission, the authority contained in the section would not be available.

Even if the President should designate a new Chairman and it should ultimately be decided by the courts that the President was not authorized to do so, the decision would not appear appreciably to affect the operations of the Commission in the interim. The provisions of the statute which created the Federal Power Commission (Pub. L. No. 66-280), the legislation which reorganized the Commission in 1930 (Pub. L. No. 71-412), and its rules and regulations have been examined, and nothing therein indicates that the powers of the Commission are to be exercised other than by the Commission as a whole. There are no unique powers vested in the Chairman which are any different from those vested in other

members of the Commission. The Commission is authorized and empowered to act as a body no matter which of its members is Chairman. 16 U.S.C. § 797 (1958).

The provisions of Reorganization Plan 9 did not change this statutory pattern. The plan transferred administrative functions to the Chairman, but it was intended, as the President explained in his message transmitting the plan, that the changes affected only "[p]urely executive duties." H.R. Doc. No. 81-504, at 4 (1950) (quotation omitted). It was made clear that the plan vested

> in the Chairman . . . responsibility for appointment and supervision of personnel employed under the Commission, for distribution of business among such personnel and among administrative units of the [Federal Power] Commission, and for the usage and expenditure of funds.

*Id.* The Senate Committee found that the Plan did not "derogate from the statutory responsibilities placed upon the other members of the Commission. They remain exactly as they are . . . ." S. Rep. No. 81-1563, at 3 (1950) (quotation omitted). Accordingly, it is difficult to see how a change in the chairmanship could affect the Commission or the rights of third parties. The possibility exists that administrative actions, e.g., employments, discharge, etc., taken by a Chairman, later determined to have been improperly designated, could be challenged, but this is believed to be of minimal consideration.

## III.

Even if it were to be assumed that the Chairman had functions which were unique to his office, the authority of his successor to act as Chairman probably could not be challenged by third parties under the "well-recognized rule that the title of one holding a public office is not subject to collateral attack and that his title can only be inquired into in some direct proceeding instituted for that purpose." Annotation, *Habeas Corpus on Ground of Defective Title to Office of Judge, Prosecuting Attorney, or Other Officer Participating in Petitioner's Trial or Confinement*, 58 A.L.R. 529, 529 (1945); *see also Ex parte Henry Ward*, 173 U.S. 452 (1899); *McDowell v. United States*, 159 U.S. 596 (1895).

It is assumed, however, that if the present Chairman were replaced his remedy would be either to sue in the Court of Claims for the additional salary ($500 per year) of which he would be deprived, for the period between the date of the change and the date on which his term of office expires, or to bring an action in the nature of *quo warranto*. Such an action was initiated by a member of the War Claims Commission upon his removal by President Eisenhower. The action was dismissed on the merits in the District Court, and in the Court of Appeals the appeal was dismissed as moot by stipulation of the parties. *See Wiener v. United*

*States*, 357 U.S. 349, 351 n.* (1958), *cf. Newman v. United States ex rel. Frizzell*, 238 U.S. 537 (1914).

As pointed out above, even if the present Chairman should prevail in any such suit, this would not affect the actions of the Federal Power Commission in the interim.

NICHOLAS deB. KATZENBACH
*Assistant Attorney General*
*Office of Legal Counsel*