## CHARLESTON.

STATE *ex rel*. DEPUE *v*. MATTHEWS.

Submitted January 14, 1898—Decided March 23, 1898.

1.  QUO WARRANTO—*Sheriff's Office—Relator*.

    In a proceeding by way of an information in the nature of a writ of *quo warranto* against a person who is claimed to have intruded into or usurped the office of sheriff of a county, such proceeding must be at the relation of some person interested, otherwise than as a citizen and taxpayer, unless such proceeding is instituted at the instance of the ATTORNEY GENERAL or the prosecuting attorney of the county. (p. 378).

2.  SHERIFF'S OFFICE—*Farming Office—Defeated Candidate*.

    Where two parties are opposing candidates for the office of sheriff, and the one receiving the highest number of votes for the office disqualifies himself from holding the same by contracting to farm or sell the office or a portion thereof, such fact does not confer any interest in the office on the party receiving the minority of the votes cast at the election. (p. 381).

Error to Circuit Court, Roane County.

*Quo warranto* by the State, on the relation of Beniah Depue, against W. B. Matthews. From a judgment for defendant, plaintiff brings error.

                                        *Affirmed*.

GEO. F. CUNNINGHAM and WM. A. PARSONS, for plaintiff in error.

WALTER PENDLETON, for defendant in error.

ENGLISH, JUDGE:

Beniah Depue and W. B. Matthews were opposing candi-

dates for the office of sheriff of Roane county at the general election held on the 3d day of November, 1896. Said Matthews received a majority of all the votes cast at said election for said office, and was declared elected by the county court of said county, qualified, and gave bond, and was authorized to enter upon the duties of sheriff of said county on the 1st day of January, 1897. On the 30th day of March, 1897, said Beniah Depue applied by petition to the circuit court of said county for leave to file an information in the nature of a writ of *quo warranto* against said William B. Matthews, and on that day leave was granted said Depue to file his petition and information accompanying the same under section 9 of chapter 109 of the Code, and directed summons to issue and be served on said Matthews, together with a copy of said information, which summons was issued and served together with a copy of said information as directed. The said Beniah Depue, after stating the facts above mentioned in regard to his opposing said Matthews at said election for the office of sheriff, also alleged: That at the time the said election was held, and at the time the petition was presented, he was a qualified voter and taxpayer of said county, and duly qualified to hold said office, was over thirty-five years of age, and had resided in said county all of his life. That after the said Matthews became a candidate for said office, about the month of August, 1896, while he was such candidate, and before the said election was held, and while the said Matthews was expecting to hold said office of sheriff, he did enter into a contract or agreement with two parties therein named, whereby he agreed that if he should be elected to the office of sheriff of said county, and if he should become such sheriff, then he would sell and let to farm unto said parties the said office of sheriff of said county for the term aforesaid, either in whole or in part, as said parties might elect; and, if they should elect not to buy or take to farm the whole of said office for the said term, then they should buy and take to farm all of said office except the district therein known and designated and called "Curtis District," the same being one of the districts of said county of Roane; but, if said parties should elect to buy and take to farm the whole of said office for said county,

then they should pay unto said W. B. Matthews a large sum of money, to wit, the sum of five hundred dollars. And the said William B. Matthews did agree and contract to sell and to let to farm the said office in whole or in part unto said parties as they might elect, upon the terms and conditions above stated; and that, by entering into said contract with said parties, said Matthews did thereby become disabled from holding the said office of sheriff for the term aforesaid, under section 5 of chapter 7 of the Code of West Virginia. That, at said election, Matthews received a majority of all the votes cast for said office, and was afterwards duly declared elected to the office of sheriff for the term aforesaid, and on or about the 14th day of November, 1896, gave bond and took the oaths required by law before the county court of said county as sheriff for said term, to commence the 1st day of January, 1897, and about that time did sell and let to farm unto the said parties the whole of said office of sheriff for the term aforesaid, for the sum of five hundred dollars. That he did not learn of the facts above stated until after the said Matthews had qualified and given bond as sheriff of said county, and until about the 1st day of January, 1897; and he charges that, under said section 5 of chapter 7 of the Code, the said Matthews, by selling and letting to farm the office of sheriff, aforesaid, became disabled and disqualified from holding the said office for the term aforesaid, and was and is ineligible thereto. Said petitioner also presented with his petition the affidavit of W. P. Pool, stating and showing that said Matthews had made a contract with said parties to sell said office for the sum of five hundred dollars which affidavit, he alleges, was shown to said Matthews by a friend of his, and said Matthews admitted that said affidavit stated the truth; and, notwithstanding he had thus become disabled from holding said office, he appointed three deputies, and on the 1st day of January, 1897, entered upon the office of sheriff of said county for the term aforesaid, and now holds, exercises, and claims the said office of sheriff; and that said Matthews did thereby intrude into and usurp said office, as contemplated in the fourth clause of the sixth section of chapter 109 of the Code; and that, under the ninth section of said chapter, said petitioner was entitled

to file an information in the nature of a writ of *quo warranto*
against the said W. B. Matthéws, and to cause him, by
proper legal proceedings, to be ousted from the office into
which he has intruded and usurped as above set forth; and
petitioner presented to the court an information which he
was advised was proper to be filed, and submitted the same
to the consideration of the court, and prayed leave to file
an information in the nature of a writ of *quo warranto*
against the said W. B. Matthews, and that proper proceed-
ings might be had thereon under the law, in the name of
the State of West Virginia; that an order should be made
filing such information, and awarding a summons against
said W. B. Matthews. On the 30th day of August, 1897,
said Matthews, by counsel, demurred to said petition and
information, which demurrer was sustained; and the peti-
tioner excepted, and asked leave to amend the informa-
tion and writ aforesaid by inserting the name of the pros-
ecuting attorney of Roane county in the petition and infor-
mation, at the relation of .petitioner, and that the same
might proceed in the name of said prosecuting attorney,
at the relation of said Beniah Depue; and the prosecuting
attorney, in open court, declined to permit said amendment
to be made in his name, and said leave and motion were re-
fused by the court, and said Depue excepted. Said Depue
also moved the court for leave to amend the information
and writ in said proceeding by substituting the name of
the prosecuting attorney of Roane county in lieu of his
name as relator therein; but said prosecuting attorney ob-
jected, and declined to permit the said amendment to be
made in his name, and thereupon said leave and motion
were also refused by the court, and said Depue excepted, and
also moved the court for leave to amend his said petition,
by stating therein that the prosecuting attorney of Roane
county declines and refuses to proceed and prosecute a
petition, proceeding, and information in the nature of a
writ of *quo warranto* against the said W. B. Matthews,
which leave and motion were also refused by the court,
and said Depue excepted; and, the said relator not desiring
to make any other amendment, it was considered by the
court that the said writ be quashed, and that said petition,
information, and proceeding be dismissed, with costs, and

the said Depue applied for, and obtained, this writ of error.

The first error assigned and relied on by the plaintiff in error is that the circuit court erred in sustaining the demurrer to the said petition and information, and in quashing the writ, and dismissing the petition, information, and proceeding, and in rendering judgment for cost against petitioner. A proper solution of the questions raised by this assignment of error involves the construction of the statute under which this proceeding was instituted. Section 9 of chapter 109 of the Code provides that, "in any case in which a writ of *quo warranto* would lie, the attorney genenral or prosecuting attorney of any county, at his own instance, or at the relation of any person interested, may, in the name of the State of West Virginia, apply to any such court as is mentioned in the seventh section of said chapter, for leave to file an information in the nature of a writ of *quo warranto* for any of the causes, and against any of the corporations, officers, or persons mentioned in the sixth section of said chapter, and he shall, at the time of his application, present to the court the information he proposes to file. If, in the opinion of such court, the matters stated in such information are sufficient in law to authorize the same to be filed, an order shall be made filing the same, and awarding a summons against the defendant named therein to answer such information. But if leave to file such information be asked on the relation of any person, or by any person at his own instance, the summons thereon shall not be issued by the clerk until such relator or person shall give the bond and security required by the next preceding section." Section 7 of the same chapter provides that, "whenever the attorney general or prosecuting attorney of any county is satisfied that a cause exists therefor, he may, at his own instance, or at the relation of any person interested, apply by petition to the circuit court of the county wherein the seat of government is, or to the county wherein the cause for issuing of such writ arose, to have such writ issued, and shall state therein the reason therefor. Whenever such writ is issued at the relation of any person the petition shall be in the circuit court of the county wherein the seat of government is, or of the county wherein the cause or any part thereof for

issuing of such writ arose as the relators may elect." Section 6 of the same chapter provides that said writ may be awarded against any person who shall intrude into or usurp any public office.

Now, it is perceived by the language of these sections that proceeding must be had at the instance of the attorney general or the prosecuting attorney, or at the relation of any person interested, where such prosecuting attorney is satisfied that a cause exists therefor.   These two things must concur:   The prosecuting attorney must be satisfied that a cause exists therefor, and then the writ may be issued at his own instance, and, if issued at the relation of any private person, such person must be interested in order to authorize the issuance of the writ.   Was such interest shown by the relator in this case by the allegations of his petition as would entitle him to have the writ issued? From the petition, which must be regarded as true upon demurrer, it appears that said Depue was a candidate for the office of sheriff of Roane county at the general election held on the 3d day of November, 1896; that he was a qualified voter and taxpayer of said county, and was duly qualified to hold said office, and was over thirty-five years of age, and had been a resident of said county all of his life. It, however, appears from the face of said petition, that at said election the defendant in ·error, Matthews, was the opposing candidate for the office of sheriff, and received a majority of all the votes cast for the said office of sheriff, and was declared elected for the term aforesaid, and gave bond and took the oaths required by law.   From this statement of facts, then, it is apparent that the relator, Beniah Depue, had no other or different interest in said office of sheriff than any other citizen or taxpayers of said county; and it further appears that said W. B. Mathews did sell and let to farm, unto certain parties therein named, the whole of said office of sheriff for the term aforesaid; yet, if such be the case, and the said Matthews became thereby disabled and disqualified from holding said office, the question presents itself whether the relator, Depue, as a citizen, taxpayer, and resident of the county of Roane, had such interest as would entitle him to the writ of *quo warranto,* upon the question of the character and amount of interest required to entitle a relator to such writ.

High, in his valuable work on Extraordinary Legal Remedies (page 657, § 700), says: "Notwithstanding the well-settled rule, already discussed, requiring the information to test the title of a public office to be filed in the name of the state, or by its attorney general or public prosecutor, the real relator may be, and often is, a private citizen, whose rights are affected by the usurpation, and who sets the public prosecutor in motion. Especially is this true when the information is sought for the two-fold purpose of ousting a usurper from an office, and of determining the right of another claimant thereto. In such cases the interest of the relator in the subject-matter becomes a question of considerable importance, in order to determine whether he is a proper party upon whose information or relation the proceedings may be had. Even under a statute extending the remedy to 'any person or persons desiring to prosecute the same,' the question of the relator's interest will be deemed decisive as to the exercise of the jurisdiction, and the relief will be granted only in behalf of one whose interests are affected by the matter in controversy. Such a statute does not entitle a private relator to the relief in a case of public right involving no individual or private grievance. So, when the statute authorizes the filing of an information upon the relation of any person who claims an interest in the office, franchise, or corporation in question, it is not sufficient to aver in the information that the relator claims an interest; but the facts should be set forth which disclose his interest. And, under a statute authorizing the information to be brought either by the attorney general or prosecuting attorney of his own motion, or by a private relator upon leave granted, permission will not be granted to a private relator, unless he shows some substantial ground for the proceeding." The Code of the State of Indiana (section 1131) provides that "an information may be filed against any person or corporation in the following cases: * * * Second, whenever any public officer shall have done or suffered any act which by the provisions of law shall work a forfeiture of his office." Section 1132 provides that "the information may be filed by the prosecuting attorney in the circuit court of the proper county upon his own relation whenever

he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise or corporation, which is the subject of the information." This statute, it is perceived, is very similar to ours: Under the West Virginia statute the relator must be interested; under the Indiana statute he must claim an interest in the office; and under this statute, in the case of *State* v. *Long*, 91 Ind. 357, it was held that "an information for usurping an elective public office, filed on the relation of one claiming the office by election, is bad on demurrer if it fail to show that such relator is eligible to the office." And the same is held in the case of *State* v. *Bieler*, 87 Ind. 320, showing that the relator must not only have an interest, but the interest must be set forth and disclosed in the information.

A case very similar to the one under consideration was decided by the supreme court of Pennsylvania. I refer to the case of *Com.* v. *Cluley*, 56 Pa. St. 270, in which it was held (third point of syllabus): "The enactment that writs of *quo warranto* may be issued on the suggestion of any person desiring to prosecute the same means any person having an interest to be affected." Also, in the next point of the syllabus in that case, it was held that, "where at an election for sheriff a majority of the votes that are cast for a disqualified person, the next in vote is not to be returned as elected." Also, in the fifth point of syllabus, it was held that: "The suggestion alleged that at an election for sheriff the person returned was disqualified." The candidate next in vote had no such interest as entitled him to be heard in a *quo warranto*. The question was exclusively a public one, and could be raised only by the attorney general. The court, in its opinion (page 272), says: "Our act, which substantially incorporates the provisions of the British statute, has received the same construction. This court has construed the words 'any person or persons desiring to prosecute the same' to mean any person who has an interest to be affected. They do not give a private relator the writ in a case of public right involving no individual grievance. In this case the party against whom the writ was asked for was attempting to act as

sheriff, in violation of the constitutional provision which provides that 'no person shall be twice chosen or appointed sheriff in any term of six years;' and the defeated candidate was seeking to oust him.'' The Code of Pennsylvania provides that "writs of *quo warranto* may be issued in case any person shall usurp, intrude into or unlawfully hold or exercise any · county or township office within the respective county;" also, "in case any person duly elected or appointed to any such office shall have done, suffered or omitted to do any act, matter or thing, whereby a forfeiture of his office shall by law be created;" and it is further provided that "in any such case the writ aforesaid may be issued upon the suggestion of the attorney general or his deputy, in the respective county or of any person or persons desiring to prosecute the same,'' which last clause, as we have seen, has been construed to mean any person who has an interest to be affected, and that the words of the statute do not give a private relator the writ in a case of public right involving no individual grievance.   Again, in the case of *State* v. *Brown,* 5 R. I. 6, the court, in its opinion, says : "It is very true that, in cases in which a private relator moves, as he may, to be permitted to use the name of the state for the purpose of inquiring by what warrant an individual holds and exercises a public office, the motion is subject to the regulative discretion of the court.   The necessity, the policy of making the inquiry, and even the position and motives of the relator in proposing it are all matters considered by the court, in the exercise of their discretion, in granting such a motion, since a court of justice will not allow the name of the state to be used, and its own time to be occupied improperly or unnecessarily, or merely to feed the grudge of a relator who has no interest in the ·matter of the inquiry, to the disturbance of the public peace.''

The question as to the kind and character of interests necessary to entitle a party to maintain the writ of *quo warranto* has been passed upon in several states.   So, in the case of *Miller* v. *Town of Palermo,* 12 Kan. 14, it was held that "private individuals who have no other interest than as citizens and taxpayers of a municipal corporation cannot maintain an action of *quo warranto* against such

corporations;" that, "if the injury is one that particularly affects a person, he has a right to the action; if it affects the whole community alike, the remedy is by proceedings by the state, through its appointed agencies." So, also, in the case of *Barnum* v. *Gilman*, 27 Minn. 466, (8 N. W. 375), it was held that "a *quo warranto* will not be issued without the consent of the attorney general, upon information of a private party having no personal interest in the question, distinct from the public, to try the right of an incumbent of a public office to hold the same." In that case the office contended for was that of lieutenant governor. In the case of *State* v. *Stein*, 13 Neb. 529, (14 N. W. 481), it held that "a private person cannot appear as relator where he does not claim the right to the office. In such case the prosecution is on behalf of the public, and must be conducted by the proper public officer." In the case of *Vrooman* v. *Michie*, 69 Mich. 42, (36 N. W. 749), the court held (point 2 of syllabus) that "leave to a private relator to file an information in the nature of a *quo warranto* under 2 Ann. How. St. § 8662, subsec. 2, should not be granted without a responsible showing of the relator's rights in the premises;" and the court, in its opinion (page 45), uses the following language : "No private citizen has any right to compel an officer to show title until he has shown his own right, in the first place, to attack it." The relator, in his petition, does not assert any claim to the office of sheriff, or interest in the office, but does state that he was candidate, and that W. B. Matthews was the opposing candidate, and received a majority of the votes cast at the election, and was declared elected. The petition claims and seeks to show that said Matthews was disqualified from holding said office by reason of the fact that he had farmed or sold a portion of the office; but, whatever might have been the disqualification of said Matthews which rendered him ineligible, such disqualification in no manner inured to the benefit of the relator, and conferred no interest in the office upon him. This point was decided by this Court in the case of *Dryden* v. *Swinburne*, 20 W. Va., 91, (ninth point of syllabus), where it is held that "if an alien and a citizen eligible to office are candidates for the same, and the alien receives a majority of the votes cast at the

election, though such alien be declared ineligible to the
office upon a contest between them, the citizen who re-
ceives a minority of the votes cast cannot be declared
entitled to the office, but it must be held to be vacant."
Under this decision, the question as to whether Matthews
had by his action forfeited his right to hold the office of
sheriff would be immaterial so far as Depue was con-
cerned, for the reason that it could confer no interest in
the office upon him.

Now, as to the question whether the prosecuting attor-
ney could exercise any discretion as to the institution of
this proceeding in his name as public prosecutor, it is well
known that the attorney general represents the interest of
the State in similar questions raised in regard to state
officers, and that the prosecuting attorney represents the
interests of the State in matters pertaining to county
officers. As we have seen, section 9 of chapter 109 of the
Code provides that, "in any case in which a writ of *quo
warranto* would lie, the attorney general or prosecuting at-
torney of any county at his own instance, or at the relation
of person interested may apply to such court as is men-
tioned in the seventh section of said chapter for leave to
file an information," etc.; and in the state of New York,
where the language of the statute is similar, using the
word "may," in the case of *People* v. *Attorney General,* 22
Barb. 114, it was held that, "under the provisions of the
Revised Statutes and the Code, it is for the attorney gen-
eral, and not the supreme court, to determine whether, in
any particular case, it is proper that an action to try the
right to an office shall be brought or not. Consequently, a
*mandamus* would not lie to compel the attorney general to
prosecute an action of that nature." The prosecuting at-
torney of a county, representing the state, would, in refer-
ence to a proceeding of this character against a county
officer, occupy the same relation as the attorney general
would if a state officer was concerned; and, following the
ruling in the New York case last mentioned, we hold that
the prosecuting attorney could exercise discretion as to
whether the writ should be prosecuted, and this view is
supported by the seventh section of chapter 109 of the
Code, which provides that "whenever the attorney general

or prosecuting attorney of any county is satisfied that a cause exists therefor he may, at his own instance, or at the relation of any person interested, apply by petition to the circuit court of the county wherein the seat of government is, or of the county wherein the cause for the issuing of such writ arose, to have such writ issue, and shall state therein the reason therefor." This statute appears clearly to state that the prosecuting attorney must be satisfied that a cause exists therefor, before he is authorized to present the petition. Now, as to the degree of interest necessary to constitute a party a competent relator, it has been frequently held that it is not necessary that such party should show title in himself to the office to make him a competent relator. As we have seen, where the statute provides that any person may apply by petition, etc., it has been held to mean any person interested. In our statute, then, where the language used is "any person interested," we must presume the legislature intended something by the word "interested;" and our construction is that it was intended to distinguish the competent relator from the ordinary citizen and taxpayer. As we have seen, in section 700 of High on Extraordinary Remedies, it is said: "Even under a statute extending the remedy to 'any person or persons desiring to prosecute the same,' the question of the relator's interest will be deemed decisive as to the exercise of the jurisdiction, and the relief will be granted only in behalf of one whose interests are affected by the matter in controversy. And such a statute does not entitle a private relator to the relief in a case of public right involving no individual or private grievance."

Several decisions of the supreme court of North Carolina and of South Carolina are relied on by counsel for the plaintiff in error to sustain the position that a citizen and taxpayer is entitled to proceed as a relator in *quo warranto;* but a reference to the Codes of those states shows that the writ of *quo warranto* and proceedings in the nature of *quo warranto* by information are abolished in both of those states, and that an action may be brought by the attorney general in the name of the state upon his own information, or upon the complaint of any private party against the parties offending, in the following cases: "(1) When any per-

son shall usurp, intrude into, or unlawfully hold or exercise any public office," etc.; the language of the statute being precisely the same in both of those states, expressly allowing a private party to make the complaint, and not requiring the party to be interested as our statute does, so that those decisions ought to have no influence upon our conclusion in this case. My conclusion, therefore, is that the weight of authority that I have been able to examine clearly indicates that a party to be entitled to file an information in the nature of a writ of *quo warranto* in a case like the one presented for our consideration must be interested otherwise than as a citizen and taxpayer. If it had been intended that any person could apply, without qualification, why was it thought necessary to add the word "interested" in the statute? I conclude, therefore, that the demurrer was properly sustained by the court for want of a competent relator, and the judgment complained of is affirmed, with costs and damages.

*Affirmed.*