STATE OF IOWA, Appellee, v. WINNESHIEK CO-OPERATIVE BURIAL ASSOCIATION, Appellant.

No. 46448.

JULY 28, 1944.

Connolly, O'Malley & McNutt, of Des Moines, and E. P. Shea, of Decorah, for appellant.

John M. Rankin, Attorney General, and Edward S. White, Jr., Assistant Attorney General, for appellee.

OLIVER, J.—We granted defendant an appeal from the order of the trial court overruling defendant's special appearance to the action in quo warranto brought by the attorney general. The petition charged appellant corporation was organized under chapter 390, Code of Iowa, 1927, for a purpose not contemplated by said chapter, to wit, the practice of the profession of embalming, and that it did illegally so operate without an embalmer's license and without being eligible for such license. Rule 300(b) of the Rules of Civil Procedure provides:

"If on demand of any citizen of the state, the county attorney fails to bring the action, the attorney general may do so * * *."

In this case the citizen who made the demand that the county attorney bring the action was the assistant attorney general who had charge of the matter for the State. In its special appearance and in argument appellant asserts the official position of the attorney general rendered him and his assistants ineligible to demand as citizens that the county attorney institute a quo warranto action, and hence, that the county attorney's failure to bring the action would not empower the attorney general to institute such action.

Rule 300(a) authorizes the governor, general assembly,

and certain courts to direct that the action be brought. Otherwise, the proper county attorney may bring the action in his discretion. Although the attorney general has certain supervisory powers over county attorneys, the rule does not empower him to direct a county attorney to bring an action in quo warranto. If, on demand, the county attorney fails to bring action, the attorney general may do so. Any citizen of the State is qualified to make the demand. No private interest in the question is required. The demand is not a part of the suit but is merely a request that the county attorney bring the action. It is the method provided whereby any citizen may ascertain whether the county attorney will do so. The provision that the attorney general may bring the action does not rest upon the demand but upon the failure of the county attorney to act after such demand.

With reference to the procedure under a prior statute, State ex rel. Fullerton v. Des Moines City Ry. Co., 135 Iowa 694, 712, 109 N. W. 867, 874, states:

"* * * although this remedy is of a special and extraordinary character, it is designed, nevertheless, to effect a speedy and effective means of settling a class of disputes affecting public interests, and the salutary purposes of the statute which provides it should not be thwarted by a narrow and technical construction."

Appellant contends the official position of the attorney general deprives him of the right of a citizen to make the demand. The attorney general is the head of the department of justice of the State. Actions in quo warranto affect public interests. Upon failure of the county attorney to bring action after demand, the attorney general may do so. If, in his discretion, he concludes such action should be instituted, it is his duty to bring it. There would be little justification for a rule which would require the attorney general to sit by without power to perform such duty for the protection of the rights of the public unless and until some other citizen might see fit to make the demand and ascertain that the county attorney would not bring the action. Nor may Rule 300 be properly so interpreted. The provision that any citizen may make the de-

mand does not except the attorney general. It clearly includes every citizen of the State. We are satisfied that the official position of the attorney general does not make him, or members of his staff, ineligible to make such demand, or upon noncompliance therewith to bring the action officially.

Our conclusion makes it unnecessary to consider appellee's contention that the attorney general of the State had power to bring the action in addition to that granted by Rule 300 and without demand upon the county attorney.—Affirmed.

MANTZ, C. J., and SMITH, MULRONEY, GARFIELD, HALE, MILLER, and WENNERSTRUM, JJ., concur.

SMITH, J. (specially concurring)—Because of the importance of the questions involved, and not because of any disagreement with the majority opinion, I would like somewhat to amplify the considerations for upholding the decision of the trial court. This special concurrence seems to me to be justified in view of the dissenting opinion of Judge Bliss.

I. As to the *assumption* of the dissenting opinion that Rule 300 affects *substantive* rights: The *substantive* right involved in a case such as this is not the right of the individual to initiate the action, but it is the right *of the State* to determine whether a public office or franchise is being unlawfully held or exercised, and to terminate any such unlawful possession or exercise. Code of Iowa, 1939, section 12417; Rule 299, Iowa Rules of Civil Procedure.

This substantive right is in no way affected by Rule 300. The sole purpose and effect of the Rule, and of the statute it supersedes, is to define the *procedure* by which the substantive right may be asserted. Under either the statutes or the Rules the action must be brought "in the name of the State." Whatever change has been wrought by the Rules affects only the *manner* in which the power of the State may be invoked and exercised. As said by Justice Weaver, in State ex rel. Fullerton v. Des Moines City Ry. Co., 135 Iowa 694, 712, 109 N. W. 867, 874, the dispute affects "public interests," and the salutary purpose of the remedy "should not be thwarted by a narrow and technical construction."

In that case it is said that "even where the relator is found to be estopped or disqualified to prosecute the action in his own private interest it has been held that the court will retain jurisdiction and pass upon the merits of the case so far as it affects public interest." Citing People v. Londoner, 13 Colo. 303, 22 P. 764, 6 L. R. A. 444. Here nothing but the public interest is concerned. Neither the ancient quo warranto nor later action in the nature of quo warranto nor the statutory provisions which our Rules (Rule 299 et seq.) supersede have ever been held to create *substantive* rights. They are procedures for enforcing substantive rights already and otherwise created and existing.

II. The dissenting opinion contends that the relator must have a special interest, apart from the general interest of all citizens, in the particular subject matter; and that Mr. White's position here as the one who made demand on the county attorney is analogous to that of a relator.

Apparently, in order to differentiate quo warranto from other proceedings in which the State's prerogative may be invoked by a relator, Judge Bliss goes into the early origins of quo warranto and "proceedings in the nature of quo warranto." But this early history has nothing to do with the remedy we now loosely refer to as "quo warranto."

We have held in effect that there is nothing sacred about "Quo warranto, actions in the nature of quo warranto, remedies provided by Section 12428 and kindred laws." Kosman v. Thompson, 204 Iowa 1254, 1257, 215 N. W. 261, 262. Other remedies may be substituted that accomplish the same or similar purposes; e. g., see Code section 8438.

In a recent case there was involved a proposed dissolution of the business of a foreign corporation in Iowa, under the provisions of Code chapter 387. The majority opinion in that case held that the relator need have no special interest. State ex rel. Weede v. Iowa Southern Util. Co., 231 Iowa 784, 837, 2 N. W. 2d 372. The statute involved there expressly clothed courts of equity with power to entertain the suit, and provided it might be brought "by the attorney general in the name of the state" or by "a citizen in the name of the state." Section 8438.

Rule 300(b) provides that if upon demand of "any citizen of the state" the county attorney fails to bring the action, the attorney general *may do so*.

In the Southern Utilities Company case it was held that by Code section 8438 the legislature provides that a citizen, even one without any interest, may at his own expense bring a suit in equity in the name of the State to enforce the power of the State over a foreign corporation doing business within the State.

By Rule 300(b), it is provided that such a citizen (without special interest) may in analogous situations make demand upon the county attorney in order to lay the foundation for the county attorney or the attorney general to act, and may even assume the role of relator himself, by leave of court and upon furnishing security for costs.

If the legislature in one case may waive the necessity for a relator to have a special interest, surely, under the rule-making power the court may do so. Without admitting that Mr. White in the instant case is in the legal situation of a relator, I am convinced his lack of a special interest did not disqualify him for the role he did assume—that of a citizen making demand upon the county attorney to act.

In the case already quoted from, State ex rel. Fullerton v. Des Moines City Ry. Co., supra, 135 Iowa 694, 712, 109 N. W. 867, 874, Justice Weaver also said:

"If the case made by the petition be one in which the statutory remedy may be invoked, if the proper officer is in court assuming responsibility for its prosecution, and if due notice of the proceeding has been given to the party named as defendant, every preliminary essential to the jurisdiction of the court to hear and try such complaint has been observed."

It is the statutory duty of the attorney general to prosecute in this court any action in which the State is a party or interested, and in any other court when, in his judgment, the interest of the State requires such action. Code section 149.

He is here assuming the responsibility of this prosecu-

tion and I think the trial court and the majority opinion properly uphold his right in doing so.

HALE, GARFIELD, OLIVER, WENNERSTRUM, MULRONEY, and MILLER, JJ., join in this special concurrence.

BLISS, J. (dissenting)—I do not agree with the reasoning nor the decision in the opinion of the court, and therefore dissent.

The opinion is based upon Rule 300(b) of the Rules of Civil Procedure, found in chapter 278 of the Laws of the Fiftieth General Assembly, prescribed and reported by this court to that assembly on January 28, 1943. No changes in the Rules, as reported, having been enacted by the assembly, they became effective on July 4, 1943, as provided by chapter 311 of the Laws of the Forty-ninth General Assembly. Section 1 of said chapter 311 is as follows:

"The Supreme Court of the State of Iowa shall have the power to prescribe all rules of *pleading, practice and procedure, and the forms of process, writs and notices, for all proceedings of a civil nature in all courts of this state,* for the purpose of simplifying the same, and of promoting the speedy determination of litigation upon its merits. *Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant.*" (Italics supplied.)

In the report of the court to the assembly it was told that the Rules were those of *"pleading, practice and procedure and forms of process, writs and notices."* Rule 1(a) states that, "These Rules shall govern *the practice and procedure* in all courts of the State * * *." (Italics supplied.)

The second rule in Division XIII, Quo Warranto, is as follows:

"Rule 300. By Whom Brought. (a) The county attorney of the county where the action lies may bring it in his discretion, and must do so when directed by the Governor, General Assembly or the Supreme or District Court, unless he may be a defendant, in which event the Attorney General may, and shall when so directed, bring the action.

"(b) If on demand of any citizen of the state, the county attorney fails to bring the action, the attorney general may do so, or such citizen may apply to the court where the action lies for leave to bring it. On leave so granted, and after filing bond for costs in an amount fixed by the court, with sureties approved by the clerk, the citizen may bring the action and prosecute it to completion."

A note subjoined to this Rule states: "(Supersedes Code Secs. 12419, 12420.)"

These sections are:

"12419. By county attorney. Such action may be commenced by the county attorney at his discretion, and must be so commenced when directed by the governor, the general assembly, or a court of record.

"12420. By *private person.* If the county attorney, on demand, neglects or refuses to commence the same, any citizen of the state *having an interest in the question* may apply to the court in which the action is to be commenced, or to the judge thereof, for leave to do so, and, upon obtaining such leave, may bring and prosecute the action to final judgment." (Italics supplied.)

Section 12422, which has also been superseded by the Rules, provided for taxing costs to the relator when not taxed to the defendant.

In my judgment, this court, in the promulgation of Rule 300, violated the legislative authority of section 1 of chapter 311 of the Acts of the Forty-ninth General Assembly, permitting it to prescribe "rules of pleading, practice and procedure," etc., and commanding that "said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant." The violation was committed in the authority given to the attorney general, and in authorizing *"any citizen of the state"* to make the demand, instead of following the substantive law stated in Code section 12420, to wit: "Any citizen of the state *having an interest in the question.*" It is for the legislature, and not for this court, to say what the substantive law shall be—to say whether or not the attorney general shall have authority in the

proceedings, and what shall be the qualifications of a relator or demanding citizen. When the legislature, within the provisions of the constitution, has so spoken, this court must respect its words, and confine its authority in the matter strictly to rules of procedure and practice.

The petition of the plaintiff alleges that, "Edward S. White, Jr., a citizen of the State of Iowa, made demand" on the county attorney of Winneshiek county that he bring the action, and upon his refusal and failure to do so, the action was brought by the attorney general of the State of Iowa. There are no other allegations respecting the relator or demanding citizen, or of his qualifications or interest. In his verification of the petition he states that he is a duly appointed, qualified, and acting assistant attorney general of the State of Iowa.

The defendant specially appeared solely to attack the jurisdiction of the court and its lack of jurisdiction of the subject matter. As grounds therefor it alleged the allegations of the petition above noted; that the action was not properly instituted as provided by sections 12419 and 12420, or chapter 531, Code of 1939; that no application was made by a citizen of the State having an interest in the question, to the court or a judge thereof, for leave to commence the action, and without first having secured such leave; that the action can only be instituted by the county attorney of Winneshiek county; that any demand made upon the county attorney was made by the attorney general's office, and by an officer thereof, and not by a citizen of the State; that Edward S. White, Jr., attempted to. fill a dual position in the action: first, as a citizen demanding action of the county attorney, and second, as an assistant to the attorney general bringing action by the latter in the name of the State; that either one of two courses was open to White: to act as a citizen or as an officer of the attorney general's office, but not both; that having made demand as a citizen he should have proceeded in the same role as provided by the statute; that neither the statute nor Rule 300(b) delegates to the attorney general, nor to his assistant, the right to make demand upon the county attorney; and that no proper demand was made upon the county attorney giving jurisdiction to the court.

Since this appeal must be determined in accordance with the pertinent statutory provisions and rules, in the light of general principles applicable to quo warranto, as noted in the decisions of the courts, treatises, and histories of English law, some brief comment thereon may be helpful. Dating back at least to 1198, in the ninth year of the reign of Richard I, this high prerogative writ was a writ of right for the sovereign alone, issued against the barons and all others, demanding that they show by what right—quo warranto—they claimed or exercised any office, franchise, or liberty of the crown. Rightly used, it was an instrument of good; but in the hands of sovereigns ever hungry for power and property, it became a ready and efficient means of encroachment against the people. According to Coke, the advisers of Edward I convinced him that since many holders of franchises, licenses, offices, etc., in the passing of the years had probably lost the charters, or all proof of these rights, it would be easy with subservient judges to oust the holders. There was such an uproar because of these encroachments that Parliament, in the sixth year (1278) and the eighteenth year (1290) of the reign of Edward I, enacted statutes greatly ameliorating the harshness in the use of the writ. Later, in the reign of Queen Anne, many abuses had been inflicted upon the common people by those claiming offices, franchises, and monopolies in municipal matters. To correct these evils, the statute, 9 Anne, chapter 20, was enacted in 1710, authorizing ''the proper officer in each of the said respective courts, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of a Quo Warranto, *at the relation of any person or persons desiring to sue or prosecute the same,''* against those usurping or intruding into any municipal office or franchise in the kingdom. (Italics supplied.) The courts, at first, interpreting the above-quoted provision literally, exercised but little discretion in issuing the writ; but later, because of the great number of informations filed, each informer or relator was required to satisfy the court that he had a special interest in the matter, distinct from the general public. Under this statute the writ ceased to be one exclusively of right. Up to the time of this statute, the writ of quo warranto, or the information in the

nature of the writ, had never been used for the benefit of a private citizen. This statute became the forerunner and prototype of many of the quo warranto statutes enacted by many of the states in this country. Some of these statutes used the language of the Queen Anne statute, permitting any person to file information, while others specifically provided that the private relator must show his special interest. Pennsylvania was of the first class. In Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270, 271, 94 Am. Dec. 75, brought to test the title to the office of sheriff, the court said:

"The British statute of 9th Anne., ch. 20, was not, at first, adopted in this state. It was not reported in force by the judges; but its provisions were incorporated into our revised code. Under the British statute it was always held to be within the discretion of the court whether to grant or withhold an information in the nature of a quo warranto, and the court acknowledged themselves bound to exercise a sound discretion upon consideration of the particular circumstances of each case. This was said by Lord Mansfield in Rex v. Wardroper, 4 Burr 1964, and the same rule was recognized in Rex v. Dawes, 4 Burr 2022, and in Rex v. Sargeant, 5 Term Rep. 467 * * *.

"Before the Act of 1836, informations in the nature of quo warranto, at the instance of a private relator, were always required to be with leave of the court, and leave was not granted except upon application of a competent relator. No one was held competent who had not a sufficient interest to warrant his interference, and our statute has made no change in this particular. Its second section gives to courts of Common Pleas concurrent jurisdiction with the Supreme Court in five classes of cases. The first three relate to municipal and other corporate offices, and the act provided that in any such case the writ might be issued upon the suggestion of the attorney-general or his deputy in the respective county, or of any person or persons desiring to prosecute the same. The other two classes relate to usurpations of corporate rights, or forfeitures of corporate privileges. As the act was reported by the commissioners to revise the civil code, it was drawn so as to provide that writs in such cases should be granted only upon the sug-

gestion of the attorney-general, or his deputy. The legislature, however, altered the provision, and enacted that writs in these cases, as in the others, might be issued upon the suggestion of any person or persons desiring to prosecute the same. But the statute of 9th Anne allowed informations at the relation of any person desiring to sue or prosecute them, and under that statute the rule was that a private relator must have an interest. Our act, which substantially incorporates the provision of the British statute, has received the same construction. This court has construed the words 'any person or persons desiring to prosecute the same' to mean any person who has an interest to be affected. They do not give a private relator the writ in a case of public right, involving no individual grievance. This was ruled in Commonwealth v. The Allegheny Bridge Company, 8 Harris [20 Pa. St.] 185, in Murphy v. The Farmers' Bank, Ibid. 415, and Commonwealth v. Railroad Co., Ibid. 518. And it is to be observed that the legislature has placed all the five classes of cases enumerated in the act on the same footing in this particular. If a private relator cannot sue out a writ to enforce a forfeiture without having an interest, the statute gives him no greater right when he complains of usurpation of a county or township office. The right of a relator in each class of cases is defined by the same words.''

The holding in the Cluley case, supra, is followed in Schermer v. Franek, 311 Pa. 341, 166 A. 878.

The first legislation in Iowa relative to information in the nature of quo warranto was approved by the first territorial legislature December 20, 1838, effective May 1, 1839. It appears as chapter 122 in the Revised Statutes of the Territory of Iowa, printed in 1843, sometimes called the ''Blue Book.'' Section 1 thereof provides that:

''* * * the district attorney of the proper county shall, when directed by the governor, the district court of the proper county, or the legislative assembly, or he may, upon his own relation, *or the relation of any private individual*, upon leave granted by said court, in term time, or the judge thereof, in vacation, file an information in the nature of a quo warranto in the said court.'' (Italics supplied.)

I find no decisions construing any section of this chapter.

In chapter 123, Code of 1851, under the title "Informations," are found the statutory provisions dealing with this subject, although the term "quo warranto" is not used. They provide that the district attorney may institute the proceedings at his discretion, and must do so on the demand of the governor, general assembly, or district court. The attorney general was given no such authority. No authority was given a citizen to file information, or to make demand on the district attorney, except a claimant to an office held by another. In such case, the information being upon the relation of a private individual, the petition had to so state, and the individual was liable for any costs not taxed to the defendant.

The statutory provisions relating to informations in the nature of quo warranto, although the latter term does not appear in the chapter, are found in chapter 151, entitled "Informations," of the Revision of 1860 (sections 3732–3757). Sections 3733 and 3734 provide that the district attorney of the proper county, whenever he deems it his duty to do so, may file, or when directed to do so by the governor, the general assembly, or the district court, must file the information. Section 3735 is the section in the Revision which corresponds to section 12420 of the Code of 1939. Said section 3735 is as follows:

"If the district attorney, on demand, neglect or refuse to file an information, any citizen of the state claiming any public office which is usurped or unlawfully exercised by another, may do so; and he may prosecute the same in his own name, to final judgment in all other respects as provided herein." The editorial notation adjoined to this section is: "*Private person* may have this process." (Italics supplied.)

In section 3746 of the Revision, it is stated:

"When an information is upon the relation of a *private individual* it shall be so stated in the petition and proceedings, and such individual shall be responsible for costs in case they are not adjudged against the defendant." (Italics supplied.)

Under chapter 151 of the Revision of 1860, the attorney

general of the State was not authorized to institute any proceedings thereunder.

In the Code of 1873, the statutory provisions in proceedings of this kind, although not using the terms "quo warranto" or "informations in the nature thereof," are found in chapter 6 of Title XX, (sections 3345–3367), under the title "Of Actions to Test Official and Corporate Rights." Section 3347 provided that action might be instituted "at his [district attorney's] discretion," and must be, when directed by the governor, the general assembly, or a court of record. Section 3348, corresponding to sections 3746 of the Revision, and 12420 of the 1939 Code, provided: "If the district attorney, on demand, neglect or refuse to commence the same, any citizen of the state *having an interest in the question * * *"* may apply to the court for leave to prosecute the action. (Italics supplied.) This is the first time that the italicized words appear in the Iowa statutes on this subject matter, but they are found in the corresponding chapter of every subsequent Code. Section 3350 of the 1873 Code refers to such action of such citizen as being brought on the relation of "a private individual." So does the corresponding section in every subsequent Code. No mention is made of the attorney general in this chapter, nor in the corresponding chapter in any subsequent Code.

Chapter 9 of Title XXI (sections 4313–4335) of the Code of 1897, including its title, is substantially identical with the corresponding chapter, supra, of the Code of 1873. Section 4316 states: *"By private person.* If the county attorney, on demand, neglects or refuses to commence the same, any citizen of the state *having an interest in the question"* may apply for leave to prosecute the action. (Italics supplied.) The fair inference from section 4318 is that the citizen referred to in section 4316 is a private individual. No statutory changes in these proceedings appear in the 1913 and 1915 Supplements to the Code of 1897.

In the Compiled Code of 1919, the provisions pertaining to this subject matter are found in chapter 15, Title XXXI (sections 8208–8230) and are identical with the corresponding sections in the Code of 1897, but the chapter is entitled "Quo Warranto."

There are no statutory changes in this chapter in the 1921 and 1923 Supplements to the Compiled Code of 1919.

The statutory proceedings in quo warranto appear under that title in chapter 531 of the Codes of 1924, 1927, 1931, 1935, and 1939, in sections 12417–12439. Each of these sections in all of the Codes last referred to is identical with the corresponding section in the Compiled Code of 1919 and the Code of 1897.

I set out these statutory provisions with particularity to relieve my associates and others of the inconvenience and labor of searching through the Codes, and to show that by no Iowa legislation, from territorial days to the present, has any general authority been granted to the attorney general or his office to institute or to procure the institution of proceedings in quo warranto or in informations in the nature thereof. There are specific Code sections authorizing the attorney general, on his own motion, or on request from other state officers or departments, to maintain such proceedings in special instances, but there is no legislative authority granting him the right to prosecute such actions generally, either on his own relation or upon the relation, information, or demand of any private individual, with or without an interest in the question. Such authority can come only from the general assembly, and not from this court. The specific Code sections which I mention are 8512.53, 9052, and 9362. There may be others which I have overlooked in my hurried investigation.

The appellee hypothesizes some instances illustrative of the urgencies which might demand the attention of the attorney general to proceed by information in the nature of quo warranto. "It was to prevent such a condition," he says, "that the attorney general was authorized to bring this action." And the majority opinion states:

"There would be little justification for a rule which would require the attorney general to sit by without power to perform such duty for the protection of the rights of the public unless and until some other citizen might see fit to make the demand and ascertain that the county attorney would not bring the action."

It is rather strange that, over a period of almost one hun-

dred years, fifty general assemblies and numerous code commissioners would not have discovered and removed this impending danger, by legislative act or recommendation.

Neither the appellee nor this court's opinion cites any decision upholding the proposition that the attorney general or any of his assistants is entitled as a citizen to make the demand upon the county attorney. I have found no such decision nor any record that the proposition was ever before advanced. The fair and reasonable intendment apparent in all of the Code chapters which I have referred to clearly indicates that it was the intention of every general assembly enacting the legislation, where the proceedings were instituted on the relation of an individual or citizen, that he should be a private person or someone other than the attorney prosecuting the proceedings. Every editorial notation and section heading so states and indicates. It is true that these notations and headings are not a part of the legislation, but they have always been given consideration and weight in statutory construction, particularly where they have continued over a period of many years, as official interpretations of public officers.

In the 1939 Code, section 12422 states: "When such action is brought upon the relation of a *private individual* * * *." (Italics supplied.) Can it fairly be said that the words did not refer to the "citizen" designated in section 12420? Obviously they refer to the same person—the private relator. I have called attention to the corresponding sections in earlier Codes.

That is the thought expressed generally in court decisions and by writers on the subject. In II High's Extraordinary Legal Remedies, 3d Ed., section 591, it is stated:

"The object of the information, as now employed in the courts of England and America, is substantially the same as that of the ancient writ of quo warranto, and while still retaining its criminal form, it has long since come to be regarded as, in substance, a civil proceeding, instituted by the public prosecutor, *upon the relation of private citizens,* for the determination of purely civil rights." (Italics supplied.)

While the attorney general and his assistants are citizens of the State, in the performance of their official duties they are

1212

public officers and are acting in that capacity, and they are not private citizens nor acting in such capacity. And when the attorney general determined to prosecute this action he did so as a public servant, and he should have continued in that capacity, and should not have changed character by reverting to a private citizen to perform one essential step in the proceeding and then become again the attorney general for the remainder of the proceeding. The fact that the assistant attorney general made the demand does not aid the appellee. If the assistant can make the demand, the attorney general also can, for he cannot do by the assistant what he cannot do by himself. Under the appellee's theory, if the statute required a citizen to make demand upon the attorney general, he, as a citizen, could make demand upon himself as attorney general.

The word "citizen" is used three times in Rule 300(b). It certainly was intended to have and should have the same meaning wherever thus used. As used in the third and sixth lines it must mean a private person, and therefore it must mean a private person in the first line, because the word "citizen" in each line refers to the same person.

I will concede that remedial legislation of this kind should be given a liberal construction to effect its purpose. But courts have noted that quo warranto is an extraordinary remedy, which the law does not offer with a liberal hand, and must be exercised sparingly, after a plain case warranting the proceeding has been presented by the petitioner to the prosecuting attorney. State ex rel. State Humane Soc. v. Hovey, 159 Wash. 584, 294 P. 258. As said in 23 Am. & Eng. Enc. Law, 2nd Ed., 604:

"Formerly leave was granted to file an information almost as a matter of course, but subsequently the rule became established that leave should be granted with caution, and with a view to all the circumstances of the case."

The rights of the individual are to be protected by the courts as jealously as those of the public.

As noted herein, this court had no power, and was expressly forbidden by section 1, of chapter 311, of the Laws of the Forty-ninth General Assembly, to abridge, enlarge, or modify the substantive rights of any litigant. This was no doubt in-

tended to mean that no rules of "pleading, practice and procedure," etc., should affect the rights of any party in pending litigation, but it was never intended to broaden the scope or purpose of said chapter 311. That purpose was to confine the authority of the court strictly to prescribing "rules of pleading," etc., and not to permit it by any rule to affect the substantive law or substantive rights granted by statute to anyone. Certain substantive rights were granted by Code section 12420. It provided that citizens of the State having an interest in the question might ask leave of the court to prosecute the action. This was a right in which the public generally and the county attorney and every private relator and every defendant in such a proceeding was interested. Rule 300(b) enlarges and modifies that right as to all those interested. It greatly limits the discretion of the county attorney and the court. Anyone who is a citizen of the State can make demand upon the first and ask leave to prosecute of the second. The defendants are exposed to a possibility, and very likely a probability, of more suits against them.

Legislatures and courts have uniformly required that a private relator have an interest in the litigated matter—a special interest distinct and apart from that of a mere member of the general public. And this has been uniformly held by the courts even though the statute did not expressly require such interest. In speaking of the court's discretion, one eminent authority on the subject stated:

"In the exercise of this discretion, upon the application of a private relator, it is proper for the court to take into consideration the necessity and policy of allowing the proceeding, as well as the position and motives of the relator in proposing it, since this extraordinary remedy will not be allowed merely to gratify a relator who has no interest in the subject of inquiry." II High's Extraordinary Legal Remedies, 3d Ed., section 605.

The same author states, in section 623, that in this country the proceeding has been most frequently used in trying title to office, either public or corporate. In such cases there are always two directly interested parties, the contestant and the incumbent. The contestant may decide not to litigate. This should end the matter. But Rule 300(b) throws down the bars to any citizen

anywhere in the State as a possible relator. The courts have uniformly held that it is the history and policy of the law that one who has no interest except that which is common to 'every other member of the public is not entitled to use the name of the State in quo warranto proceedings. The interest must be special and personal to the relator. 23 Am. & Eng. Enc. Law, 2d Ed., 610, 616, 617, 618, 621. The fact that he is a citizen of the State is not sufficient. The fact that he is a taxpayer may not aid him if his interest as such is not different from all taxpayers in general. I call attention to a few of the many decisions so holding. Newman v. United States ex rel. Frizzell, 238 U. S. 537, 35 S. Ct. 881, 59 L. Ed. 1446; Ex parte Albert LéVitt, 302 U. S. 633, 58 S. Ct. 1, 82 L. Ed. 493; People ex rel. Hiller v. Bevirt, 297 Ill. App. 335, 17 N. E. 2d 629; Rowan v. City of Shawneetown, 378 Ill. 289, 38 N. E. 2d 2; State ex rel. Smith v. Mills, 2 Wash. 566, 27 P. 560; Miller v. Town of Palermo, 12 Kan. 14; State ex rel. Depue v. Matthews, 44 W. Va. 372, 29 S. E. 994; Toncray v. Budge, 14 Idaho 621, 95 P. 26, 33; State ex rel. Scanes v. Babb, 124 W. Va. 428, 20 S. E. 2d 683; Wood v. Arnall, 189 Ga. 362, 6 S. E. 2d 722; Hammer v. Commonwealth ex rel. Hoover, 169 Va. 355, 193 S. E. 496; State ex rel. Johnson v. Clayton, 211 Ind. 327, 7 N. E. 2d 32, 33; People ex rel. Miller v. Fullenwider, 329 Ill. 65, 160 N. E. 175. In Newman v. United States ex rel. Frizzell, supra, 238 U. S. 537, 549, 35 S. Ct. 881, 884, 59 L. Ed. 1446, 1451, Justice Lamar, speaking for the court said:

''Frizzell applied to the Attorney General for permission to institute the proceedings. Failing to secure that consent, he then applied to the Supreme Court [of the District of Columbia] claiming that the fact that he was a citizen and a taxpayer made him an 'interested person' entitled to the use of the writ. But such construction would practically nullify the requirement to obtain the consent of the Attorney General and the District Attorney. For if being a citizen and a taxpayer was sufficient to warrant the court in giving the consent, it was useless to require an application to be first made to the Attorney General because practically every litigant would have the qualification of citizenship and many would have that of being a property owner. * * *

The interest which will justify such a proceeding by a private individual must be more than that of another taxpayer. It must be 'an interest in the office itself and must be peculiar to the applicant.' "

This court has never held that citizenship in the State is, in itself, a sufficient interest to qualify a private individual as a relator. The matter is discussed at some length in State ex rel. Fullerton v. Des Moines City Ry. Co., 135 Iowa 694, 712–716, 109 N. W. 867, 875. Some of the discussion was dictum, as the relators owned property abutting on the streets and had " 'a right to and interest in the street distinct and different from that of the general public.' " In State ex rel. West v. City of Des Moines, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381, the relator owned land in the territory annexed to the city, which qualified him as a taxpayer, but he was held not to be a proper relator for other reasons. In State ex rel. White v. Barker, 116 Iowa 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222, some of the relators were qualified specially as tax contributors, and the intervener as superintendent of the waterworks system. The question involved was the validity of the appointment of the defendants to the board of waterworks trustees. The foundation of the right of the taxpayer to complain is the increase of his tax burden or the liability of such increase. Brockman v. City of Creston, 79 Iowa 587, 592, 44 N. W. 822.

The petition in the case before us does not allege that Mr. White was a taxpayer, and his simply being a taxpayer would be only an interest in common with taxpayers in general and would not be an interest personal to him in the matter herein involved. While this action is not entitled on the relation of Mr. White, yet, since the action is bottomed upon his demand on the county attorney, whatever standing the action has is based on that fact. At common law the proceeding of quo warranto was a civil one, but under the statutes it was in the nature of a criminal action, since a defendant who was ousted was also subject to a fine. Because of that the proceeding has retained some of the terminology of criminal procedure. The term "relator" means nothing more than an "informer," or one who complains, or makes demand for action. State ex rel. Fullerton v. Des Moines City Ry. Co.,

supra, 135 Iowa 694, 710, 109 N. W. 867; 2 Spelling, Extraordinary Relief, section 1835.

If the attorney prosecuting in the name of the State does so at the demand or on the relation of a private individual, the petition should so show, so that if the costs are not taxed against the defendant they may be charged against such relator rather than the State. Section 12422, Code of 1939.

Recapitulating, it is my view that Rule 300 is of no force or effect with respect to any authority granted to the attorney general, and with respect to fixing the qualifications of the private person making the demand upon the county attorney, contrary to the provisions of the 1939 Code, section 12420, because this court has and had no power or authority to prescribe such Rule. Further, if it may be said that Rule 300(b) is valid and enforceable, then the term "any citizen of the state" should be held to mean a citizen "having an interest in the question" involved. I have already quoted from Commonwealth ex rel. McLaughlin v. Cluley, supra, 56 Pa. 270, 94 Am. Dec. 75, on this last-mentioned point. See, also, State ex rel. Depue v. Matthews, supra, 44 W. Va. 372, 29 S. E. 994, 996, 997; and II High's Extraordinary Legal Remedies, 3d Ed., section 700, stating:

"Even under a statute extending the remedy to 'any person or persons desiring to prosecute the same,' the question of the relator's interest will be deemed decisive as to the exercise of the jurisdiction, and the relief will be granted only in behalf of one whose interests are affected by the matter in controversy."

I am satisfied that this court has no jurisdiction or power to specify the qualifications of a relator, or of the individual making demand upon the county attorney, but, if it be conceded arguendo that we have, nevertheless, the record does not show Mr. White to be qualified as a relator, because he lacks the proper and requisite interest and because his official position as prosecutor forbids his also taking the role of a private citizen and making demand upon the county attorney.

It also appears clear to me that this court has no jurisdiction or power to do what every general assembly has seen fit not to do—that is, to give the authority which Rule 300 grants to the

attorney general. If we have such jurisdiction or power, then the court may also undo what the general assembly has done and prescribe a rule denying the county attorney any authority to institute any quo warranto proceedings under any circumstances. Obviously, the court has no such power or authority.

I would reverse the order of the trial court overruling the special appearance.